# EXHIBIT A

# EXHIBIT A



CORPORATION SERVICE COMPANY®

null / ALL<br>
Transmittal Number: 12975713<br>
Date Processed: 09/22/2014

# Notice of Service of Process

**Primary Contact:**     Barbara Ruyle
Nationstar Mortgage LLC
350 Highland Drive
Lewisville, TX 75067

| | |
|---|---|
| **Entity:** | Nationstar Mortgage LLC |
| | Entity ID Number  2050233 |
| **Entity Served:** | Nationstar Mortgage LLC |
| **Title of Action:** | Dale Dowers vs. Nationstar Mortgage LLC |
| **Document(s) Type:** | Notice |
| **Nature of Action:** | Violation of State/Federal Act |
| **Court/Agency:** | Clark County District Court, Nevada |
| **Case/Reference No:** | A-14-706621-B |
| **Jurisdiction Served:** | Nevada |
| **Date Served on CSC:** | 09/22/2014 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Jay A. Shafer |
| | 702-794-4411 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

1   **SUMM**

2   Jay A. Shafer, Esq.
    Nevada Bar No. 9184

3   PREMIER LEGAL GROUP
    1333 North Buffalo Drive, Suite 210

4   Las Vegas, Nevada 89128
    Telephone: (702) 794-4411

5   Fax: (702) 794-4421

6   jshafer@premierlegalgroup.com

7   Mark C. Fields, Esq.
    Nevada Bar No. 008453

8   LAW OFFICES OF MARK C. FIELDS, APC

9   333 South Hope Street, 35th Floor
    Los Angeles, California 90071

10  Telephone: (213) 617-5225
    Fax: (213) 629-4520

11  fields@markfieldslaw.com

12  Attorney for Plaintiffs Dale Dowers and Debra Dowers

13                       **DISTRICT COURT**

14                  **CLARK COUNTY, NEVADA**

15

16  DALE DOWERS, an individual; and, DEBRA          )
    DOWERS, an individual;                          )   Case No.: A-14-706621-B
17                                                  )   Dept. No. XXVIII
                     Plaintiffs,                    )
18                                                  )
    v.                                              )
19                                                  )   **SUMMONS**
    NATIONSTAR MORTGAGE LLC, a Delaware             )
20  limited liability company; WELLS FARGO         )
    BANK MINNESOTA, NATIONAL                        )
21  ASSOCIATION, a national banking association,    )   **EXEMPT FROM ARBITRATION**
    individually and as Trustee for holders of the Banc )  **(Amount in Controversy Exceeds $50,000)**
22  of America Alternative Loan Trust 2003-7        )
    Mortgage Pass-through Certificates, Series 2003- )
23  2007; WELLS FARGO BANK, NATIONAL                )
    ASSOCIATION; DOES 1 through 25, and ROE         )
24  BUSINESS ENTITIES II through X, inclusive,      )
                                                    )
25                   Defendants.                    )
                                                    )
26

27

28

                              -1-

**NOTICE!  YOU HAVE BEEN SUED AS A DEFENDANT.  THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.  READ THE INFORMATION BELOW.**

### WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION

**TO THE DEFENDANT:** A civil Complaint has been filed by the Plaintiff in the above-entitled action for the relief set forth in the Complaint, more specifically: (1) Violation of 15 U.S.C.§ 1692c(a)(2); (2) Violation of 15 U.S.C. § 1692d; (3) Violation of 15 U.S.C. § 1692e; (4) Violation of 15 U.S.C. § 1692f(6); (5) Intentional Infliction of Emotional Distress; and (6) Deceptive Trade Practices Pursuant To Chapter 598 of NRS.

1.      If you intend to defend this lawsuit, within 20 days after this Summons is served on you exclusive of the day of service, you must do the following:

    a.      File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court follows:

    b.      Serve a copy of your response upon the attorney whose name and address is shown below.

2.      Unless you respond, your default will be entered upon application of the Plaintiff and this Court may enter a judgment against you for the relief demanded in the Complaint, which could result in taking of money or property or other relief requested in the Complaint.

. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .

-2-

3.    If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

STEVEN D. GRIERSON , CLERK OF THE COURT

By: _Lisamarie Vaquero_

**Deputy Clerk**
Regional Justice Center
200 Lewis Avenue
Las Vegas, Nevada, 89155

Date: 9-12-14

LISAMARIE VAQUERO

Issued at the direction of:

PREMIER LEGAL GROUP

By: _____
JAY A. SHAFER, ESQ.
Nevada Bar No. 9184
1333 North Buffalo Drive, Suite 210
Las Vegas, Nevada 89128
Telephone: (702) 794-4411
Attorney for Plaintiff

-3-

Electronically Filed
09/18/2014 07:45:50 PM

CLERK OF THE COURT

1   SUBST
    Jay A. Shafer, Esq.
2   Nevada Bar No. 9184
3   PREMIER LEGAL GROUP
    1333 North Buffalo Drive, Suite 210
4   Las Vegas, Nevada 89128
    Telephone: (702) 794-4411
5   Fax: (702) 794-4421
6   jshafer@premierlegalgroup.com

7   Mark C. Fields, Esq.
    Nevada Bar No. 008453
8   LAW OFFICES OF MARK C. FIELDS, APC
9   333 South Hope Street, 35th Floor
    Los Angeles, California 90071
10  Telephone: (213) 617-5225
    Fax: (213) 629-4520
11  fields@markfieldslaw.com
12  Attorney for Plaintiffs Dale Dowers and Debra Dowers

13                    **DISTRICT COURT**

14               **CLARK COUNTY, NEVADA**

15

16  DALE DOWERS, an individual; and, DEBRA
    DOWERS, an individual;
17                                              Case No.: A-14-706621-B
                    Plaintiffs,                 Dept. No. XXVIII
18
    v.                                          **NOTICE OF SUBSTITUTION AND**
19                                              **DESIGNATION OF WELLS FARGO**
    NATIONSTAR MORTGAGE LLC, a Delaware         **BANK, NATIONAL ASSOCIATION AS**
20  limited liability company; WELLS FARGO      **DEFENDANT ROE BUSINESS ENTITY I**
    BANK MINNESOTA, NATIONAL
21  ASSOCIATION, a national banking association,
    individually and as Trustee for holders of the Banc  **EXEMPT FROM ARBITRATION**
22  of America Alternative Loan Trust 2003-7     **(Amount in Controversy Exceeds $50,000)**
    Mortgage Pass-through Certificates, Series 2003-
23  2007; WELLS FARGO BANK, NATIONAL
    ASSOCIATION; DOES 1 through 25, and ROE
24  BUSINESS ENTITIES II through X, inclusive,

25                  Defendants.

26

27

28

                              -1-

<u>**NOTICE OF SUBSTITUTION AND DESIGNATION OF WELLS FARGO BANK,**</u>
<u>**NATIONAL ASSOCIATION AS DEFENDANT ROE BUSINESS ENTITY I**</u>

**COME NOW** Plaintiffs DALE DOWERS and DEBRA DOWERS, by and through their

Counsel MARK C. FIELDS, ESQ. of the LAW OFFICES OF MARK C. FIELDS, APC and JAY A.

SHAFER, ESQ. of the law firm of PREMIER LEGAL GROUP, and hereby substitute WELLS FARGO

NATIONAL ASSOCIATION as Defendant in stead and place of ROE BUSINESS ENTITY I in this

litigation pursuant to NRCP 10(a) and NRCP 15(a).

DATED this 16th day of September, 2014

PREMIER LEGAL GROUP


By:_____/s/ Mark C. Fields_____
        Mark C. Fields, Esq.
        Nevada Bar No. 008453
        LAW OFFICES OF MARK C. FIELDS, APC
        333 South Hope Street, 35th Floor
        Los Angeles, California 90071
        Telephone: (213) 617-5225
        Fax: (213) 629-4520
        fields@markfieldslaw.com

        Jay A. Shafer, Esq.
        Nevada Bar No. 9184
        PREMIER LEGAL GROUP
        1333 North Buffalo Drive, Suite 210
        Las Vegas, Nevada  89128
        Telephone: (702) 794-4411
        Fax: (702) 794-4421
        jshafer@premierlegalgroup.com
        Attorney for Plaintiffs

Electronically Filed
09/05/2014 03:53:44 PM

*[signature]*

CLERK OF THE COURT

1 **COMP**
Jay A. Shafer, Esq.
2 Nevada Bar No. 9184
Premier Legal Group
3 1333 North Buffalo Drive, Suite 210
Las Vegas, Nevada 89128
4 Telephone: (702) 794-4411
Fax: (702) 794-4421
5
jshafer@premierlegalgroup.com
6 Attorney for Plaintiffs,
Dale Dowers and Debra Dowers
7

8 Mark C. Fields, Esq.
Nevada Bar No. 008453
9 Law Offices Of Mark C. Fields, APC
333 South Hope Street, 35th Floor
10 Los Angeles, California 90071
Telephone: (213) 617-5225
11 Fax: (213) 629-4520
fields@markfieldslaw.com
12 Attorney for Plaintiffs,
Dale Dowers and Debra Dowers
13

14

15                    **DISTRICT COURT**

16              **CLARK COUNTY, NEVADA**

17

18 DALE DOWERS, an individual; and, DEBRA    ) Case No.: **A-14-706621-C**
DOWERS, an individual;                     )
19                                          ) Dept. No.     **XXVIII**
             Plaintiffs,                    )
20                                          ) **COMPLAINT FOR DAMAGES AND**
   v.                                       ) **INJUNCTIVE RELIEF**
21                                          )
   NATIONSTAR MORTGAGE LLC, a Delaware      ) **JURY TRIAL REQUESTED**
22 limited liability company; WELLS FARGO   )
   BANK MINNESOTA, NATIONAL                 ) **EXEMPT FROM ARBITRATION**
23 ASSOCIATION, a national banking association, ) **Amount in Controversy Exceeds $50,000**
   individually and as Trustee for holders of the Banc )
24 of America Alternative Loan Trust 2003-7   )
   Mortgage Pass-through Certificates, Series 2003- )
25 2007; DOES 1 through 25, and ROE BUSINESS )
   ENTITIES I through X, inclusive,          )
26                                          )
             Defendants.                     )
27                                          )
                                            )
28

                              -1-

**COMES NOW** Plaintiffs Dale Dowers and Debra Dowers, and as and for their Complaint against the above-named Defendants, complain, allege, and aver as follows:

## GENERAL ALLEGATIONS

1.    Plaintiffs Dale Dowers and Debra Dowers, husband and wife, reside in Clark County, Nevada, at their home located at 9408 Tournament Canyon Drive, Las Vegas, Nevada 89144 (the "Home").

2.    Defendant Nationstar Mortgage LLC ("Nationstar") is a Delaware limited liability company, actually conducting business in Clark County, Nevada.

3.    Defendant Wells Fargo Bank Minnesota, National Association ("Wells Fargo") is a national banking association, actually conducting business in Clark County, Nevada.  Wells Fargo is named as a Defendant in its own behalf and also as Trustee for holders of the Banc of America Alternative Loan Trust 2003-7 Mortgage Pass-through Certificates, Series 2003-7 (the "BofA Trust").

4.    In perpetrating the wrongful conduct as hereinafter alleged in this Complaint, Nationstar acted as the agent of Wells Fargo and BofA Trust, who are thus responsible for the wrongful acts perpetrated by their agent Nationstar.

5.    The true names and capacities of Defendants DOES 1 through 25 and ROE BUSINESS ENTITIES I through X are unknown to Plaintiffs, who therefore sue said persons and entities by said fictitious names.  Each of the parties designated as a DOE is responsible in some manner for the events and happenings described in the Complaint which proximately caused the damages as alleged herein.  Each of the parties designated a ROE BUSINESS ENTITY is responsible in some manner for the events and happenings described herein which proximately caused the damages to Plaintiffs as alleged herein.  Plaintiffs will ask leave of Court to amend the Complaint to insert the true names and capacities of the

-2-

1   DOES and/or ROE BUSINESS ENTITIES and state appropriate charging allegations, when that

2   information has been ascertained.

3

4        6.     Venue is proper in this Court, because the Defendants perpetrated wrongful acts as set

5   forth in this Complaint in Las Vegas, Nevada, the damage to Plaintiffs occurred in Las Vegas, Nevada,

6   and Plaintiff's Home is located in Las Vegas, Nevada.

7

8        7.     BofA Trust purports to be the current holder and/or beneficial owner of a note ("Note")

9   and deed of trust ("Deed of Trust"), copies of which are attached hereto, respectively, as Exhibits 1 & 2.

10

11        8.     BofA Trust purports to be the assignee of the Note and the Deed of Trust from assignor

12   Bank of America, N.A., pursuant to the attached "Assignment Of Security Instrument ("Assignment"), a

13   copy of which is attached hereto as Exhibit 3.  Well Fargo is the Trustee of the BofA Trust.

14

15        9.     The purported Assignment states *inter alia* that Bank of America is the owner and holder

16   of the Security Instrument described as follows, but for the information listed as to the Deed Of Trust

17   being assigned leaves all the information blank, including leaving blank the information as to the

18   recording date of the Deed of Trust purportedly being assigned and also leaving blank all information

19   regarding the recordation of the Deed of Trust purportedly being assigned.

20

21        10.     The Assignment purports to assign from the assignor to the assignee both the Note and

22   the Deed of Trust, despite failing to complete the information set forth on the Assignment as to the Deed

23   of Trust.

24

25        11.     On or about November 13, 2013, Nationstar sent to Mr. and Mrs. Dowers a Notice Of

26   Assignment, Sale, Or Transferring Of Servicing Rights ("Servicing Assignment"), a copy of which is

27   attached hereto as Exhibit 4.  Pursuant to the Servicing Assignment, the rights to service the Note and

28

-3-

1   Deed of Trust were assigned from Bank of America, N.A. to Nationstar.

2

3       12.     On or about July 21, 2010, Mr. and Mrs. Dowers obtained a discharge of debts in their

4   Chapter 7 bankruptcy case.  A copy of the Order discharging the debtors is attached hereto as Exhibit 5.

5

6       13.     On or about September 30, 2013, MTC Financial Inc, dba Trustee Corps as Substitute

7   Trustee under the Deed of Trust recorded in the Clark County Recorder's Office a Declaration Of

8   Default and Demand for Sale and Notice of Breach and Election to Cause Sale (the "Notice Of

9   Default"),  to initiate a non-judicial foreclosure sale of Mr. and Mrs. Dowers' Home.

10

11      14.     Pursuant to applicable provisions of Nevada law, with respect to the Notice Of Default as

12  to Mr. and Mrs. Dowers' Home, a Document Conference was held on December 16, 2013 and a

13  Foreclosure Mediation was conducted on February 4, 2014.

14

15      15.     At the Document Conference and at the Foreclosure Mediation, neither Wells Fargo nor

16  BofA Trust were able to submit the required Affidavit Of Certification Of Documents, with respect to

17  the Note, the Deed of Trust, the Assignment, the Servicing Assignment, or any other document.  A true

18  and correct copy of the form of the Affidavit Of Certification Of Documents ("Documents Affidavit") is

19  attached hereto as Exhibit 6.

20

21      16.     Because of Defendants' failure to produce a completed Documents Affidavit in

22  connection with the Document Conference and the Foreclosure Mediation, the Mediator ruled on

23  February 13, 2014 as follows: **"WILL NOT ISSUE** a Certificate Of Foreclosure" (Emphasis in

24  original.)  A copy of the ruling by the Mediator to not issue a Certificate Of Foreclosure (the "February,

25  2014 Non-Foreclosure Ruling") is attached hereto as Exhibit 7.

26

27      ///

28

-4-

17.     On March 25, 2014, Nationstar sent a letter (a copy of which is attached hereto as Exhibit 8) to Mr. and Mrs. Dowers.  Nationstar's March 25, 2014 letter falsely states that "If you do not pay the full amount of the default, Nationstar may accelerate the entire sum of both principal and interest due and payable, **and invoke any remedies provided for in the Note and security instrument, including but not limited to the foreclosure sale of the property.**" (Emphasis added.)

18.     At the time Nationstar sent the March 25, 2014 letter, the Defendants were not in a position to invoke the remedies provided for in the Deed of Trust because none of the Defendants were able to provide the requisite Documents Affidavit and the February, 2014 Non-Foreclosure Ruling had already been issued.

19.     In or about the last week of March, 2014, Nationstar followed up the March 25, 2014 letter with a phone call from David Dobson to Dale Dowers, in which Mr. Dobson was rude, bullying, and abusive, including the absurd request for Mr. Dowers to verify his phone number on which Mr. Dobson had called him.

20.     On April 2, 2014, Mark Fields, counsel for Mr. and Mrs. Dowers, sent a letter (a copy of which is attached hereto as Exhibit 9) to Nationstar in reply to Nationstar's March 25, 2014 letter and Mr. Dobson's rude phone call.  Mr. Fields' letter stated that Nationstar's threat to foreclose was in direct violation of the February, 2014 Non-Foreclosure Ruling, and also stated that Mr. Fields represents Mr. and Mrs. Dowers and that all communications from Nationstar be in writing and directed to Mr. Fields rather than his clients, Mr. and Mrs. Dowers.  Mr. Fields' April 2, 2014 letter stated, *inter alia*, as follows:

> You have improperly and unlawfully communicated verbally and in writing (including your letter to Mr. Dowers dated March 25, 2014) with Dale Dowers, demanding payment of sums allegedly owed and stating that Nationstar Mortgage LLC ("Nationstar") will start foreclosure proceedings if the above-referenced loan (the "Loan") is not paid off.

-5-

        You threat to initiate foreclosure proceedings is in direct violation of the State of Nevada Foreclosure Mediation Program, which issued on February 13, 2014 with respect to the Property a Notice that it **"WILL NOT ISSUE** a Certificate Of Foreclosure" (the "Notice") (emphasis in original).  A copy of the Notice is attached hereto.

        Your threat to foreclose on the Property is in direct violation of the Notice.  Although Nationstar may believe it can bully its borrowers in violation of the law, Nationstar is not above the law and such abusive tactics are a violation of state and federal debt collection statutes.

        This letter is a demand for all of the following:

        1.      That Nationstar send a letter repudiating the threat of foreclosure as set forth in your March 25, 2014 letter to Mr. Dowers.

        2.      That Nationstar confirm that it will not initiate any foreclosure proceedings unless and until such time as it obtains a Certificate Of Foreclosure pursuant to the State of Nevada Foreclosure Mediation Program.

        3.      That Nationstar cease all communications with my clients, Dale Dowers and Debra Dowers.  All future communications from Nationstar relating to the Property should be directed to me and should be in writing.

        . . .

        I note that simply googling "Nationstar" shows a sordid history of abusive debt collection practices and actions by various state Attorney Generals in response thereto.  I note that your demand letter was in direct violation of the Notice, and was an abusive attempt to gain by intimidation what you could not gain legally.  Mr. Dowers informed me that your were extremely rude and abusive on the phone, which is par for the course with your sleazy practices.

        21.     Despite the very explicit written instruction on April 2, 2014 by counsel that all communications with his clients be directed toward counsel and be in writing, Nationstar continued thereafter to contact his clients, Mr. and Mrs. Dowers, both verbally and in writing.

        22.     On at least three occasions in late May to early June, 2014, Nationstar personnel verbally called Mr. Dowers (twice by a person named Adam who refused to give his last name, and once by a woman who stated she worked for Adam).

23.     In May through June, 2014, Nationstar placed written notices on the door of Mr. and Mrs.

Dowers Home, which notices state in large, bold capital letters "IMPORTANT", and also stated in

"PLEASE BE READY TO GIVE YOUR ACCOUNT NUMBER" and "WE ARE EXPECTING YOUR

CALL TODAY". A true and correct copy of the Notice, which was left three times on Mr. and Mrs.

Dowers Home, is attached hereto as Exhibit 10.

24.     On June 18, 2014, Nationstar sent a Mortgage Loan Statement (a copy of which is

attached hereto as Exhibit 11) directly to Mr. and Mrs. Dowers, in violation of Mr. Fields' April 2, 2014

letter which instructed all communications from Nationstar for Mr. and Mrs. Dowers be sent to Mr.

Fields, their counsel.

25.     On June 25, 2014, Mr. Fields, as counsel for Mr. and Mrs. Dowers, sent an email (a copy

of which is attached hereto as Exhibit 12) to Nationstar and Trustee Corps (the foreclosure trustee). Mr.

Fields' June 25, 2014 email noted that his prior April 2, 2014 letter demanded that Nationstar cease all

communication with his clients and that this demand had been violated. Mr. Fields' June 25, 2014 email

also demanded the immediate removal and/or rescission of the Notice Of Default as an improper cloud

on title based on the February, 2014 Non-Foreclosure Ruling. The June 25, 2014 email stated, *inter*

*alia*, as follows:

> As a starting point, I am attaching a copy of my April 2, 2014 letter to Mr. Dobson of
> Nationstar, demanding that Nationstar cease all communications with my clients, Dale
> and Debbie Dowers. Mr. Ullinger of Nationstar has failed to follow that demand and has
> continued to unlawfully harass my clients and to attempt to illegally collect a debt which
> has been discharged in bankruptcy and to enforce a lien in direct violation of the State of
> Nevada Foreclosure Mediation program, which issued on February 13, 2014 with respect
> to the subject property located at 9408 Tournament Canyon Drive, Las Vegas, Nevada
> 89144 (the "Property") a Notice which stated that it: **"WILL NOT ISSUE a Certificate
> Of Foreclosure"**. (Emphasis in original.) Nationstar has recently gone so far as to place
> documents directly on my clients' Property, demanding an immediate response from my
> clients to Nationstar.
>
> After Nationstar's and Mr. Ullinger's continued wrongful communications with my
> clients, Mr. Dowers was told to contact the law firm of MalcomCisneros. When he
> contacted that law firm, Mr. Dowers was given the run around and told to talk to Mr.

Eng, who apparently works not for MalcomCisneros but for an entity affiliated with MalcolmCisneros which conducts foreclosures.

I asked Mr. Eng yesterday whom at MalcomCisneros was handling this matter, and he was not able to provide any information whatsoever.  To the extent that MalcomCisneros is representing either Trustee Corps or Nationstar in this matter, please let me know immediately and please forward this email to that mystery attorney.

Demand is hereby made on Nationstar, MalcolmCisneros, and Trustee Corps to immediately remove and/or rescind the Notice Of Default improperly recorded against the Property and which has not been removed despite Nationstar's total failure in the Nevada Foreclosure Mediation Program.   Such Notice of Default is a continuing, invalid cloud on title, and Mr. and Mrs. Dowers reserve all claims against all parties for the wrongful continuance of such cloud on title.  This claim is specifically made against *inter alia* Trustee Corps.  This claim is also specifically made against Bank of America, which will be held responsible for the wrongful acts of its agents, whether those agents be Nationstar, MalcolmCisneros, or Trustees Corps.

Attached is an Affidavit Of Certification Of Documents ("Affidavit").  Unless and until such Affidavit is completed and notarized as required by Nevada law prior to any foreclosure, and thereafter returned to me, there is no legitimate reason whatsoever for my clients to consider any type of negotiations with Nationstar, which is of course why Nationstar has utilized the illegitimate tactics of harassing my clients directly and making invalid claims, threats, and continuing its illegal cloud on title.

26.     On July 14, 2014, Mr. Fields received a letter from Nationstar dated July 3, 2014 (a copy of which is attached hereto as Exhibit 13), which stated that Nationstar's goal was to respond by July 3, 2014 to Mr. Fields' April 2, 2014 letter.

27.     On July 15, 2014, Mr. Fields sent an email (a copy of which is attached hereto as Exhibit 14) to Nationstar and Trustee Corps, which stated, *inter alia*, as follows:

I received yesterday the attached letter dated July 3, 2014 from Jeffrey Bass, stating that he would respond to my April 2, 2014 letter by July 23, 2014.  That's three and a half months to respond to a letter, and ignores my June 25, 2014 letter.

I called Mr. Bass today; when he was unavailable, I spoke with Ron Payne, who is also a Customer Relations Specialist.  Customer Relations Specialist - - now that's a funny joke.  He was unable to provide any substantive response to my demand to immediately rescind the Notice of Default, and I then spoke to his supervisor, Eliana Suarez, who was equally unhelpful.

-8-

It is clear that Bank of America and Nationstar are hiding behind layers of bureaucracy to avoid fulfilling their obligation to rescind the Notice of Default. Mr. Bass' letter dated July 3, 2014 states he will respond to my April 2, 2014 letter by July 23, 2014. Let me be clear. The time for Nationstar and Bank of America to continue to refuse to rescind their invalid Notice of Default has long since expired. If it is not rescinded by the end of this week, please be assured that by the end of the month if not sooner that this firm will file a lawsuit against Bank of America and Nationstar for quiet title and for all other remedies available at law and equity for the outrageous abuse of violating and continuing to violate Nevada foreclosure procedures on Mr. and Mrs. Dowers' home. It is quite apparent that your intentionally bad faith tactics are nothing more than an attempt to scare your borrowers into thinking you have the right to foreclose on their home, which you don't.

I demand and expect an immediate end to the stonewalling and abusive approach of Bank of America and Nationstar.

This is the third time I have demanded in writing that the Notice of Default be rescinded. The next demand will be in the form of a Summons and Complaint.

28.     On July 16, 2014, Trustee Corp recorded a Notice Of Rescission (a copy of which is attached hereto as Exhibit 15) of the Notice Of Default.

29.     On July 21, 2014, Nationstar sent a letter (a copy of which is attached hereto as Exhibit 16) to Mr. Fields. That letter falsely stated that Nationstar did not receive notice that Mr. Fields represented Mr. and Mrs. Dowers until July 3, 2013. That statement is a blatant lie made in a useless attempt to justify Nationstar's numerous continued written and verbal communications with his clients after Nationstar was first informed by Mr. Fields April 2, 2014 letter that he represented Mr. and Mrs. Dowers, which information was again provided in Mr. Fields' June 25, 2014 email.

30.     Nationstar's July 21, 2014 letter also states that the current owner of the Note is Wells Fargo Bank Minnesota as Trustee for BOAALT 2003-7. Mr. and Mrs. Dowers have never been informed of that transfer of interest in the Note and Deed of Trust, which transfer is different than the transfer purported effected by the Assignment (albeit a defectively completed Assignment) attached hereto as Exhibit 3.

31.     Nationstar's July 21, 2014 letter refused to respond to the repeated demands that Nationstar state whether it or the lender had possession of the original loan documents and could thus complete the Documents Affidavit required to initiate a non-judicial foreclosure.  In an attempt to obfuscate the issue and thus keep illicit pressure and stress on Mr. and Mrs. Dowers, Nationstar's July 21, 2014 letter stated as follows:  "However, there are some circumstances where the owner has given temporary possession of the loan note to the servicer.  The owner does this in order to ensure that the servicer is able to perform the services and duties incident to the servicing of the mortgage loan, such as foreclosure actions, bankruptcy cases, and other legal proceedings."

32.     On August 26, 2014, Nationstar sent a letter (a copy of which is attached hereto as Exhibit 17) to Dale Dowers and Debra Dowers, which stated that the Home may be referred to foreclosure fourteen days after the date of this letter.

33.     Nationstar's August 26, 2014 letter threatening foreclosure, sent directly to Mr. and Mrs. Dowers in direct violation of numerous written communications from their counsel, also made the blatant lie: "Noteholder, directly or through an agent, has possession of the promissory note."

34.     Nationstar's August 26, 2014 letter also states that Nationstar is the servicer for WELLS FARGO BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR BANC OF AMERICA ALTERNATIVE LOAN TRUST 2003-7, which of course is in conflict with Nationstar's July 21, 2014 letter which states the current owner of the Note is Wells Fargo Bank Minnesota as Trustee for BOAALT 2003-7.

35.     On August 27, 2014, Nationstar sent a letter (a copy of which is attached hereto as Exhibit 18) to Mr. Fields.  That letter specifically stated that it refused to state whether Nationstar or the lender could complete the Documents Affidavit because "this information is considered outside the scope of information that must be provided."  What makes this refusal to provide the information especially egregious and loathsome is that virtually concurrently with stonewalling providing that vital

-10-

1  and relevant information, Nationstar sent the day prior the August 26, 2014 letter directly to Mr. and

2  Mrs. Dowers threatening foreclosure and stating falsely that "Noteholder, directly or through an agent,

3  has possession of the promissory note."

4

5      36.    On August 27, 2014, Mr. Fields sent an email (a copy of which is attached hereto as

6  Exhibit 19) to Nationstar, which states, *inter alia*, as follows:

7

8      This letter will follow up the message I left on your voicemail a few moment ago. I
       received your Notice dated August 26, 2014 with respect to the above-referenced
9      Account and Property. I note that your Notice stated in Section 1 (entitled "Right to
       Foreclose") that Nationstar intends to initiate a foreclosure on the Property and further
10     states: "Noteholder, directly or through an agent, has possession of the promissory
       note."
11

12     Let me be extremely blunt. I think it extremely likely that your Notice which states that
       Nationstar intends to initiate a foreclosure is an illegal threat, because the statement that
13     "Noteholder, directly or through an agent, has possession of the promissory note" is a
       blatant and abusive lie.
14

15     Attached please find emails/correspondence which I have sent to Nationstar on April 2,
       2014, June 25, 2014, and July 15, 2014. Also attached please find a Notice dated
16     February 13, 2014 from the Administrative Offices of the Courts, Supreme Court of
       Nevada, denying Nationstar's right to proceed with a foreclosure because Nationstar
17     and/or the Lender and/or the Noteholder were unable to complete the requisite Affidavit
       Of Documents that Nationstar and/or the Lender and/or the Noteholder have possession
18     of the original loan documents.

19
       Based on my increasingly frustrated and aggressive emails, Nationstar has recently and
20     belatedly recorded a rescission of the Notice Of Default that it improperly left on the
       Property despite the ruling on February 13, 2014 denying the foreclosure. Your letter
21     now threatens to repeat the same invalid legal act, and compounds that wrongful threat by
       lying about the possession of the original loan documents. I have been asking in writing
22     for many months now for Nationstar to complete and send to me a notarized Affidavit Of
       Documents, and Nationstar has failed to do so. If Nationstar was in a position to have
23     completed a notarized Affidavit Of Documents, it would already have done so in
       connection with the mediation procedure in Nevada and also in response to my numerous
24     emails since then.
25

26     / / /

27

28

-11-

1    **That leaves us with Nationstar again committing unlawful debt collection practices,**
2    **and well as actual fraudulent threats to intimidate its borrowers. My clients have**
     **authorized me to file a lawsuit against Nationstar and Wells Fargo Bank for your**
3    **continued fraudulent and bullying tactics and illegal debt collection activities.**
     (emphasis retained).
4

5        37.    Mr. Fields sent to Nationstar another email (a copy of which is attached hereto as Exhibit
6    20) on August 27, which stated, *inter alia*, as follows:

7
         This office will not allow Nationstar to make knowingly false statements and then hide
8        behind layers of bureaucracy to obfuscate its dishonesty.

9        Demand is hereby made that you immediately confirm whether or not the statement in
10       your August 26, 2014 Notice that "Noteholder, directly or through an agent, has
         possession of the promissory note" is truthful or untruthful. If it is truthful, then demand
11       is again made that you provide a signed and notarized Affidavit Of Documents.

12
         If you do not respond to this direct demand in this email to clarify whether the above-
13       referenced statement is true or false, and if such a statement turns out to be false, then
         your refusal to correct your lie will be an additional element of actual damages and a
14       basis for a massive amount of punitive damages, based not only on a lie but on a
15       continuing cover-up of the lie. Since you made the statement yesterday, you must know
         whether such statement is true or false, and so there can be no excuse for not responding
16       to this email tomorrow.

17
         38.    On August 29, 2014, Mr. Fields sent an email (a copy of which is attached hereto as
18   Exhibit 21) to Nationstar, which stated, *inter alia*, as follows
19

20       I hereby repeat the demand set forth in the below email that you immediately confirm
21       whether or not the statement in your August 26, 2014 Notice that "Noteholder, directly or
         through an agent, has possession of the promissory note" is truthful or untruthful.
22
         If you fail to confirm whether that statement is truthful or untruthful, and if it turns out to
23       be simply a lie you used to increase the intimidation of your unlawful threat, your
24       continued stonewalling will have severe consequences.

25       I note specifically that making a false statement in an effort to collect a debt is a violation
         of 15 United States Code Section 1692e and that attempting to collect a debt through
26       conduct which is harassing, oppressive, and abusive is a violation of 15 United States
27       Code Section 1692d. I suspect you violate both provisions multiple times each work day
         sometime between breakfast and lunch, but this time your intended victims won't take it
28       lying down.

                                              -12-

39.     On August 29, 2014, Mr. Fields sent another email (a copy of which is attached hereto as Exhibit 22) to Nationstar, this time directed to Nationstar's Jay Bray (Nationstar's CEO and Manager) and Harold Lewis (Nationstar's President and COO), which email stated, *inter alia*, as follows:

> I am forwarding the below emails and the attached documents to you in your capacities as CEO and Manager (Mr. Bray) and President and COO (Mr. Lewis) of Nationstar Mortgage, LLC.  I want to make sure that there can be no doubt that the abusive and lying collection tactics of Nationstar Mortgage has been brought to the attention of the highest levels of that corrupt organization, so that punitive damages can be appropriately assessed.

40.     On September 4, 2014, Nationstar emailed a letter (a copy of which is attached hereto as Exhibit 23), which purported to respond to Mr. Fields' August 27, 2014 correspondence (Exhibit 19 and 20).  Nationstar's September 4, 2014 letter, using identical language as Nationstar's July 21, 2014 letter, continued to refuse to respond to the repeated demands that Nationstar state whether it or the lender had possession of the original loan documents and could thus complete the Documents Affidavit required to initiate a non-judicial foreclosure.  In an attempt to obfuscate the issue and thus keep illicit pressure and stress on Mr. and Mrs. Dowers, Nationstar's September 4, 2014 letter stated as follows:  "However, there are some circumstances where the owner has given temporary possession of the loan note to the servicer.  The owner does this in order to ensure that the servicer is able to perform the services and duties incident to the servicing of the mortgage loan, such as foreclosure actions, bankruptcy cases, and other legal proceedings."

41.     Nationstar's September 4, 2014 letter simply ignored the demands set forth in Exhibits 19 – 22 to immediately confirm whether or not the statement in Nationstar's August 26, 2014 letter that "Noteholder, directly or through an agent, has possession of the promissory note" is truthful or untruthful.

42.     Enclosed with the email with transmitted Nationstar's September 4, 2014 letter were attachments, which included a document entitled Original Document File Review Checklist, dated March 20, 2014. ("Original Document Checklist"), a copy of which is attached hereto as Exhibit 24.

-13-

1   Nationstar's Original Document Checklist which was enclosed with Nationstar's September 4, 2014

2   letter purports to show that Nationstar has possession of the original of the Note and Deed of Trust.

3

4        43.     If Nationstar actually had the original Note and Deed of Trust, it would have certainly

5   produced such documentation at the Foreclosure Mediation or would have completed, signed, and

6   notarized the Documents Affidavit in order to proceed with a non-judicial foreclosure sale of the Home.

7

8        44.     Nationstar's transmission on September 4, 2014 of Nationstar's falsely completed

9   Original Document File Review Checklist is another egregious example of Nationstar's obnoxious and

10  continual improper collection activities.

11

12       45.     Nationstar has failed to direct respond to Exhibits 19 – 22 and the demand for Nationstar

13  to state clearly whether the statement in Nationstar's August 26, 2014 letter that "Noteholder, directly or

14  through an agent, has possession of the promissory note" is truthful or untruthful.  Rather, Nationstar

15  continues its abusive and loathsome practice of lying about having possession of the Note and Deed of

16  Trust and stonewalling when called on its lie, all in an effort to deceive and intimidate Mr. and Mrs.

17  Dowers into believing that they are in imminent risk of losing their Home to foreclosure.  Nationstar has

18  refused the demand in four separate emails to confirm the truth or accuracy of the statement in

19  Nationstar's August 26, 2014 letter sent directly to Mr. and Mrs. Dowers (rather than their counsel),

20  threatening foreclosure and stating that either Noteholder or its agents had the Note.

21

22       46.     The Defendants' aforedescribed intentional and deliberate campaign of unlawful

23  harassment, bullying, lying, intimidation and improper and abusive debt collection practices (including

24  repeatedly contacting Mr. and Mrs. Dowers directly both verbally and in writing after having been

25  informed by counsel that all communications should go directly to counsel) (collectively, "Defendants'

26  Harassment/Lying Campaign") have resulted in severe emotional distress to Mr. and Mrs. Dowers.

27

28

-14-

47.    Primarily because of Defendants' Harassment/Lying Campaign and the severe emotional distress intentionally caused by Defendants' Harassment/Lying Campaign, Mr. and Mrs. Dowers have decided to move from Las Vegas.

48.    Defendants do not have the legal ability to conduct either a non-judicial or even a judicial foreclosure sale of the Home. They do not have possession of the originals of the requisite loan documents or related documents, including the Note, the Deed of Trust, or any assignments pertaining thereto. The Defendants and affiliated entities are themselves unable to even determine intelligibly who purports to hold what interest in the loan documents, as evidenced by the following inconsistencies in statements made in several of the attached exhibits, including the following inconsistent statements.

48.A    The Note and Deed of Trust (Exhibits 1 and 2) were originally between Mr. and Mrs. Dowers and Bank of America, N.A.

48.B    The Assignment (Exhibit 3) of the Note and Deed of Trust is from Bank of America, N.A. to Wells Fargo Bank Minnesota, National Association, as trustee for holders of the Banc of America Alternative Loan Trust 2003-7 Mortgage Pass-through Certificates, Series 2003-7 ("BofA Trust"). The Assignment purported to transfer from Assignor to Assignee all of Assignor's rights in the Note and Deed of Trust. None of the Exhibits to this complaint, nor any other document ever provided by Defendants to Plaintiffs, show who the holders of the BofA Trust are in any of the varying description of said trust, as described *infra*.

48.C    At the Foreclosure Mediation in February, 2014, as shown on the last page of Exhibit 4, the lender(s) described by themselves as Wells Fargo NA and also Bank of America – AA National Way.

48.D    Nationstar's July 21, 2014 letter (Exhibit 16) at the third page states that the current owner of the Note is Wells Fargo Bank Minnesota as Trustee of BOAALT 2003-7.

1      48.E   Nationstar's August 26, 2014 letter (Exhibit 17) at the first page states that

2    Nationstar is the loan servicer for WELS FARGO BANK NATIONAL ASSOCIATION [not Wells

3    Fargo Bank Minnesota], AS TRUSTEE FOR BANC OF AMERICA ALTERNATIVE LOAN TRUST

4    2003-7.

5

6      49.   In other words, in various official communications with Plaintiffs or Plaintiffs' counsel,

7    the Trustee has been variously stated to be: (A) Wells Fargo NA; (B) Wells Fargo Bank Minnesota,

8    National Association; and (C) Well Fargo Bank National Association.  The trust as to which Wells

9    Fargo (in whatever varying form Wells Fargo is acting in) is acting as Trustee has been variously stated

10   to be: (A) Banc of America Alternative Loan Trust 2003-7 Mortgage Pass-through Certificates, Series

11   2003-7; (B) BOAALT  2003-7; and (C) Banc of America Alternative Loan Trust 2003-7.  At the

12   foreclosure mediation in February, 2014, Bank of America – AA National Way (along with Wells Fargo

13   NA) is listed as the lender, despite having purported assigned all of its interest in the Note and Deed of

14   Trust pursuant to the Assignment (Exhibit 3).

15

16     50.   As a result of being chased from their Home because of Defendants' Harassment/Lying

17   Campaign, Mr. and Mrs. will be forced to pay off the Note.  As of July 31, 2014, the balance of the Note

18   was $854,676.18.  If not for Defendants' Harassment/Lying Campaign, that amount would never have to

19   be paid because the Defendants are unable to foreclose on the Home and Mr. and Mrs. Dowers have

20   received a Chapter 7 discharge.

21

22     51.   Defendants' conduct has damaged Mr. and Mrs. Dowers in an amount sufficient to pay

23   off the Note.  Alternatively, the Defendants' Harassment/Lying Campaign damaged Mr. and Mrs.

24   Dowers in an amount consisting of all payments they shall make for a replacement residence from the

25   time they start to make payments on a replacement residence to the date (if any) that the Defendants

26   would have otherwise been able to complete a judicial foreclosure sale of the Home.

27

28

-16-

52.     In addition to the foregoing damages, Mr. and Mrs. Dowers have been damaged by approximately $100,000, consisting of costs of sale of the Home, and also costs of moving their residence.

53.     The Defendants' conduct as herein alleged was and continues to be oppressive, fraudulent, and malicious, and therefore Plaintiffs are entitled to punitive and exemplary damages in an amount to be proven at trial.

54.     Plaintiffs are entitled to injunctive relief, to enjoin the initiation by Defendants of any non-judicial foreclosure proceedings.

55.     As a result of Defendants' wrongful conduct, Plaintiffs have been required to retain the services of an attorney in order to prosecute this action and therefore are entitled to reasonable attorneys' fees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF 15 U.S.C. § 1692c(a)(2);
### AGAINST ALL DEFENDANTS)

56.     Plaintiffs hereby repeat and incorporate by reference the prior Paragraphs of this Complaint.

57.     Defendants have repeatedly violated 15 U.S.C. § 1692c(a)(2), by directly contacting Mr. and Mrs. Dowers both verbally and in writing, including posting notices of their Home, after Defendants had been informed in writing by counsel to only communicate directly with counsel rather than his clients.

-17-

58.     Plaintiffs have been damaged by Defendants' wrongful conduct, in an amount to be determined at trial.

59.     In addition to their liability for actual damages caused to Plaintiffs, Defendants are also liable for statutory damages pursuant to 15 U.S.C. § 1692k, in an amount to be determined at trial.

60.     The Defendants' conduct as herein alleged was and continues to be oppressive, fraudulent, and malicious, and therefore Mr. and Mrs. Dowers are entitled to punitive and exemplary damages in an amount to be proven at trial

### SECOND CAUSE OF ACTION
### (VIOLATION OF 15 U.S.C. § 1692d; AGAINST ALL DEFENDANTS)

61.     Plaintiffs hereby repeat and incorporate by reference the prior Paragraphs of this Complaint.

62.     Defendants have repeatedly violated 15 U.S.C. § 1692d, by perpetrating Defendants' Harassment/Lying Campaign, as alleged *supra*.

63.     Plaintiffs have been damaged by Defendants' wrongful conduct, in an amount to be determined at trial.

64.     In addition to their liability for actual damages caused to Plaintiffs, Defendants are also liable for statutory damages pursuant to 15 U.S.C. § 1692k, in an amount to be determined at trial.

65.     The Defendants' conduct as herein alleged was and continues to be oppressive, fraudulent, and malicious, and therefore Mr. and Mrs. Dowers are entitled to punitive and exemplary damages in an amount to be proven at trial.

-18-

**THIRD CAUSE OF ACTION**
**(VIOLATION OF 15 U.S.C. § 1692e;**
**AGAINST ALL DEFENDANTS)**

66.     Plaintiffs hereby repeat and incorporate by reference the prior Paragraphs of this Complaint.

67.     Defendants have repeatedly violated 15 U.S.C. § 1692e, by perpetrating Defendants' Harassment/Lying Campaign, as alleged *supra*.

68.     Plaintiffs have been damaged by Defendants' wrongful conduct, in an amount to be determined at trial.

69.     In addition to their liability for actual damages caused to Plaintiffs, Defendants are also liable for statutory damages pursuant to 15 U.S.C.§ 1692k, in an amount to be determined at trial.

70.     The Defendants' conduct as herein alleged was and continues to be oppressive, fraudulent, and malicious, and therefore Mr. and Mrs. Dowers are entitled to punitive and exemplary damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF 15 U.S.C. § 1692f(6);**
**AGAINST ALL DEFENDANTS)**

71.     Plaintiffs hereby repeat and incorporate by reference the prior Paragraphs of this Complaint.

72.     Defendants have repeatedly violated 15 U.S.C. § 1692f(6), by perpetrating Defendants' Harassment/Lying Campaign, as alleged *supra,* including by repeatedly threatening a non-judicial foreclosure sale of the Home when Defendants had no right or intent to non-judicially foreclose.

-19-

73.    Plaintiffs have been damaged by Defendants' wrongful conduct, in an amount to be determined at trial.

74.    In addition to their liability for actual damages caused to Plaintiffs, Defendants are also liable for statutory damages pursuant to 15 U.S.C.§ 1692k, in an amount to be determined at trial.

75.    The Defendants' conduct as herein alleged was and continues to be oppressive, fraudulent, and malicious, and therefore Mr. and Mrs. Dowers are entitled to punitive and exemplary damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; AGAINST ALL DEFENDANTS)

76.    Plaintiffs hereby repeat and incorporate by reference the prior Paragraphs of this Complaint.

77.    Defendants perpetrated Defendants' Harassment/Lying Campaign with the actual intent to cause emotional distress to Plaintiffs.

78.    Defendants' Harassment/Lying Campaign constituted extreme, outrageous, abusive, fraudulent, and loathsome conduct, with all such conduct by Defendants undertaken and perpetrated with the actual intent to cause emotional distress to Plaintiffs.

79.    Defendants' Harassment/Lying Campaign has caused severe emotional distress to Mr. and Mrs. Dowers, sufficient to drive them from their Home and to leave Las Vegas. This nightmare, intentionally caused by Defendants, is compounded by the facts that the Home was intended by Mr. and Mrs. Dowers to be their dream home, that they would never leave. Mr. Dowers personally designed the Home and acted as general contractor for the construction of the Home. They raised their children in

-20-

1  that Home from before their teenage years until the time they graduated college.  Mrs. Dowers

2  frequently cries herself to sleep from the abuse, stress, uncertainty, and lies she has suffered at the hands

3  of Defendants.

4

5       80.    Plaintiffs have been damaged by Defendants' wrongful conduct, in an amount to be

6  determined at trial.

7

8       81.    The Defendants' conduct as herein alleged was and continues to be oppressive,

9  fraudulent, and malicious, and therefore Mr. and Mrs. Dowers are entitled to punitive and exemplary

10  damages in an amount to be proven at trial.

11

12                    **SIXTH CAUSE OF ACTION**

     **(DECEPTIVE TRADE PRACTICES PURSUANT TO CHAPTER 598 OF NRS)**

13                        **AGAINST ALL DEFENDANTS)**

14

15       82.    Plaintiffs hereby repeat and incorporate by reference the prior Paragraphs of this

16  Complaint.

17

18       83.    Defendants have been, and currently are, engaged in a pattern and practice of trade

19  behavior under which Defendants have and continue to repeatedly make false and fraudulent

20  representations regarding services which are to be provided and performed by Defendants as entities

21  doing business in the State of Nevada.

22

23       84.    Defendants, by perpetrating Defendants' Harassment/Lying campaign, engaged in a

24  pattern and practice of deceptive trade practices, in violation of Chapter 598 of the NRS.

25

26       85.    Pursuant to 598.0953, engaging in deceptive trade practices as set forth in Chapter 598 of

27  the Nevada Revised Statutes constitute prima facie evidence of intent to injure Plaintiffs.

28

86.     Plaintiffs have been damaged by Defendants' wrongful conduct, in an amount to be determined at trial.

87.     The Defendants' conduct as herein alleged was and continues to be oppressive, fraudulent, and malicious, and therefore Mr. and Mrs. Dowers are entitled to punitive and exemplary damages in an amount to be proven at trial.

WHEREFORE, Mr. and Mrs. Dowers pray for judgment against Defendants and each of them, jointly and severally, as follows:

1.     Actual damages, in sums to be determined at the time of trial;

2.     General damages in sums to be determined at the time of trial;

3.     For statutory damages and/or penalties in sums to be determined at the time of trial;

4.     Punitive and/or exemplary damages in an amount appropriate to punish and/or set an example of these Defendants pursuant to Chapter 41 of the Nevada Revised Statutes;

5.     For preliminary and permanent injunctive relief;

6.     Reasonable attorneys' fees and costs of suit;

7.     Pre-judgment interest;

/ / /

/ / /

-22-

8.   For any and all such other and further relief as the Court may deem just and proper.

DATED this 5th day of September, 2014.

LAW OFFICES OF MARK C. FIELDS, APC


By: ___/s/___ Mark C. Fields, Esq_____
Mark C. Fields, Esq.
Nevada Bar No. 008453
333 South Hope Street, 35th Floor
Los Angeles, California 90071
(213) 617-5225

PREMIER LEGAL GROUP

By: _____
Jay A. Shafer, Esq.
Nevada Bar No. 9184
1333 North Buffalo Drive, Suite 210
Las Vegas, Nevada 89103
(702) 794-4411

Attorneys for Plaintiff

-23-

**EXHIBIT 1**

(Page 1 of 54)

LOAN NUMBER: 6120472383

# NOTE

05/29/03      LAS VEGAS      NV
[Date]      [City]      [State]

9480 TOURNAMENT CANYON DRIVE, LAS VEGAS, NV 89144

**CERTIFIED TRUE COPY**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    897,500.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.375   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1ST   day of each month beginning on AUGUST 01, 2003 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   JULY 01, 2018   I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at BANK OF AMERICA MORTGAGE, P.O. BOX 17404, BALTIMORE, MD 21297-1404   or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    7,273.93

## 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES.



610   870958298   N   001   001

MULTISTATE FIXED RATE NOTE – Single Family      Page 1 of 3

BS5N (0101)        VMP MORTGAGE FORMS - (800)521-7291

BS5R 05/29/03 11:42 AM 6120472383



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5 .0           % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

BSSN 101011

BSSR 05/29/03 11:42 AM 6120472383

(Page 3 of 54)

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ , _____        _____ (Seal)
DALE W. DOWERS, INDIVIDUALLY AND AS TRUSTEE UTA DATED 08/13/1993                     -Borrower

_____ , _____        _____ (Seal)
DEBRA J. DOWERS, INDIVIDUALLY AND AS TRUSTEE UTA DATED 08/13/1993                    -Borrower

_____        _____ (Seal)
                                                                                    -Borrower

_____        _____ (Seal)
                                                                                    -Borrower

_____        _____ (Seal)
                                                                                    -Borrower

_____        _____ (Seal)
                                                                                    -Borrower

_____        _____ (Seal)
                                                                                    -Borrower

_____        _____ (Seal)
                                                                                    -Borrower

BS5N (0101)                                                          *(Sign Original Only)*

BS5R 05/29/03 11:42 AM 6120472383        Page 3 of 3

(Page 4 of 54)

PAY TO THE ORDER OF

Wells Fargo Bank Minnesota, National Association, as trustee
for holders of the Banc of America Alternative Loan Trust 2003-7
Mortgage Pass-through Certificates, Series 2003-7

WITHOUT RECOURSE

BANK OF AMERICA, N.A.

BY:

William L. Craig.
Vice President

**EXHIBIT 2**

2003 06 05
.03377

Assessor's Parcel Number: 138-30-713-010
Escrow No. 03104356-017    MAIL TAX STATEMENTS TO:
Return To:    LOAN # 6120472383, CA7-701-02-36
BREA POST CLOSING,  BANK OF AMERICA - NPC
275 VALENCIA AVENUE,  PO BOX 2334
BREA, CA  92822
Prepared By:  ARSENI JA GOMBOSEV
BANK OF AMERICA, N.A.
26 EXECUTIVE PARK, SUITE 200
IRVINE, CA  926140000

CERTIFIED TRUE COPY

Recording Requested By:
UNITED TITLE OF NEVADA
3980 HOWARD HUGHES SPKWY #100
LAS VEGAS, NV

610  870968298  D2 001  001

——————— [Space Above This Line For Recording Data] ———————

LOAN # 6120472383

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   MAY 29, 2003   ,
together with all Riders to this document.
(B) "Borrower" is  DALE DOWERS AND DEBRA J. DOWERS, AS TRUSTEES OF THE
DOWERS TRUST NO. 1 ESTABLISHED AUGUST 13, 1993, BY DALE DOWERS AND DEBRA
J. DOWERS, AS TRUSTORS

Borrower is the trustor under this Security Instrument.
(C) "Lender" is   BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of  THE UNITED STATES OF AMERICA

NEVADA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT           Form 3029 1/01

-6(NV) (0107)
Page 1 of 15                    Initials:
VMP MORTGAGE FORMS - (800)521-7291

CVNV 05/29/03 11:42 AM 6120472383

6120472383
Name: DOWERS                                    Location: 1031
Customer: BKAM              Pool: BOAALT20037-PRI\

20030605
.03377

Lender's address is 26 EXECUTIVE PARK, SUITE 200, IRVINE, CA 926140000

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is  PRLAP, INC.

(E) "Note" means the promissory note signed by Borrower and dated   MAY 29, 2003
The Note states that Borrower owes Lender  EIGHT HUNDRED NINETY SEVEN THOUSAND FIVE
HUNDRED AND 00/100                                                           Dollars
(U.S. $       897,500.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than    JULY 01, 2018
(F) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

REVOCABLE TRUST RIDER

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable
final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments
and other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated
by check, draft, or similar paper instrument, which is initiated through an electronic terminal,
telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial
institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale
transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and
automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages described
in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of
all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations
of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest
under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and
restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does
not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property,
whether or not that party has assumed Borrower's obligations under the Note and/or this Security
Instrument.

Initials: _____

-6(NV) (0107)                              Page 2 of 16                              Form 3029 1/01
CVN  05/29/03 11:42 AM 6120472383

2003 06 05
.03377

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          COUNTY          of     CLARK                                :
          [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

*Ø8

Parcel ID Number: 138-30-713-010                    which currently has the address of
9480 TOURNAMENT CANYON DRIVE                                             [Street]
LAS VEGAS                                    [City], Nevada 89144     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Initials

-6(NV) (0107)                    Page 3 of 15                    Form 3029 1/01
CVNV 05/29/03 11:42 AM 6120472383

20030605
.03377

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.

Initials:

200306 05
.03377

Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible

Initials

200306 05
.03377

levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and

200306 05
.03377

settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the

-6(NV) (0107)

CMN 05/29/03 11:42 AM 6120472383

Page 7 of 15

Initials:

Form 3029 1/01

20030605
.03377

Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: [signature]

200306 05
.03377

(b) Any such agreements will not affect the rights Borrower has – if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials

-6(NV) (0107)                          Page 9 of 15                          Form 3029 1/01
CVNV  05/29/03  11:42 AM  6120472383

200306 05
.03377

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

ⓜ-6(NV) (0107)     Page 10 of 15     Form 3029 1/01

CVNV 05/29/03 11:42 AM 6120472383

20030605
.03377

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or

20030605
.03377

entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials:

20030605
.03377

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $      1% UPB, MIN $400, MAX $900

Initials:

-6(NV) (0107)                          Page 13 of 16                          Form 3029 1/01
CVNN 05/23/03 11:42 AM 6120472383

200306 05
03377

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                      DALE W. DOWERS, AS TRUSTEE UTA DATED   -Borrower
                                      08/13/1993

_____     _____ (Seal)
                                      DEBRA J. DOWERS, AS TRUSTEE UTA DATED  -Borrower
                                      08/13/1993

_____ (Seal)     _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                -Borrower

⊕ -6(NV) (0107)              Page 14 of 15            Form 3029 1/01
                                      CVNV 05/29/03 11:42 AM 6120472383

20030605
.03377

STATE OF NEVADA
COUNTY OF *CLARK*

This instrument was acknowledged before me on *MAY 30, 2003*

by *DALE W. DOWERS AND DEBRA J. DOWERS*



NOTARY PUBLIC
STATE OF NEVADA
County of Clark
B. CAROL WARREN
Appt. No. 99-53509-1
My Appt. Expires March 26, 2007

*B. Cu C h*

Mail Tax Statements To:   DALE W. DOWERS
                          9480 TOURNAMENT CANYON DRIVE
                          LAS VEGAS, NV 89144

—6(NV)  (0107)                    Page 19 of 19           Initials: ___   Form 3028 1/01

CVNV 05/29/03 11:42 AM 6120472393

20030605
.03377

## LEGAL DESCRIPTION

Parcel One (1):

Lot Seventy-Two (72) in Block "A" of SUMMERLIN VILLAGE 3 CUSTOM LOTS UNIT NO. 2, as shown by map thereof on file in Book 75 of Plats, Page 99, in the Office of the County Recorder of Clark County, Nevada.

Parcel Two (2):

A Non-exclusive easement for ingress, egress and enjoyment on, over and across the Common Elements and Association Property, subject to the conditions set forth in the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Summerlin Community Association recorded September 25, 1990 in Book 9000925 as Document No. 01274, Official Records, and as set forth in the Amended and Restated Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Summerlin North Community Association recorded August 15, 1997 in Book 970815 as Document No. 00692, Official Records, and as set forth in the Supplemental Declaration of Covenants, Conditions and Restrictions and Grant of Easements for Canyon Fairways Community Association recorded August 13, 1996 in Book 960813 as Document No. 00554, Official Records, as the same may from time to time be amended and/or supplemented in the Office of the County Recorder of Clark County, Nevada, which easement is appurtenant to Parcel One (1).

20030605
.03377

LOAN # 6120472383

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this          29TH          day of
MAY, 2003                 , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of
the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
BANK OF AMERICA, N.A.

(the "Lender")
of the same date and covering the Property described in the Security Instrument and located at:
 9489 TOURNAMENT CANYON DRIVE, LAS VEGAS, NV 89144

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in
*** COVENANTS, CONDITIONS, AND RESTRICTIONS ***

(the "Declaration"). The Property is a part of a planned unit development known as

SUMMERLIN VILLAGE 3
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners
Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of

MULTISTATE PUD RIDER – Single Family

Page 1 of 3

BS7R (0008)          VMP MORTGAGE FORMS – (800)521-7291

M07P 05/29/03 11:42 AM 6120472383

20030605
.03377

incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B.  Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C.  Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D.  Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E.  Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F.  Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BS7R (0008)                    Page 2 of 3              M07P 05/29/03 11:42 AM 6120472383

2003 06 05
.03377

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ , Trustee _____ (Seal)
DALE W. DOWERS , AS TRUSTEE UTA DATED 09/13/1993                                         -Borrower

_____ , Trustee _____ (Seal)
DEBRA J. DOWERS, AS TRUSTEE UTA DATED 09/13/1993                                         -Borrower

_____ (Seal)
                                                                                         -Borrower

_____ (Seal)
                                                                                         -Borrower

_____ (Seal)
                                                                                         -Borrower

_____ (Seal)
                                                                                         -Borrower

_____ (Seal)
                                                                                         -Borrower

_____ (Seal)
                                                                                         -Borrower

BS7R (0008)                          Page 3 of 3                    M07P 05/29/03 11:42 AM 6120472383

200306 05
.03377

LOAN # 6120472383

Revocable Trust Rider

## DEFINITIONS USED IN THIS RIDER

(A) "Revocable Trust" The    DOWERS TRUST NO. 1

Trust created under trust instrument dated                 AUGUST 13        ,        1993

(B) "Revocable Trust Trustees"    DALE W. DOWERS, DEBRA J. DOWERS

trustee(s) of the Revocable Trust.

(C) "Revocable Trust Settlor(s)"    DALE W. DOWERS, DEBRA J. DOWERS

settlor(s) of the Revocable Trust signing below.

(D) "Lender" BANK OF AMERICA, N.A., IRVINE LOAN CENTER, 26 EXECUTIVE PARK,
SUITE 200, IRVINE, CA 926140000

(E) "Security Instrument" The Deed of Trust, or mortgage and any riders thereto of the same
date as the Rider given to secure the Note to the Lender of the same date and covering the
Property (as defined below).

(F) "Property" The property described in the Security Instrument and located at
9480 TOURNAMENT CANYON DRIVE, LAS VEGAS, NV 89144

(Property Address)

THIS REVOCABLE TRUST RIDER is made this                 29TH        day of
MAY          , 2003      and is incorporated into and shall be deemed to amend and
supplement the Security Instrument.

ᵫ —BA113 (9709).01        Page 1 of 3
ELECTRONIC LASER FORMS, INC. • (800)327-0545        RE-901-MS

C113 05/29/03 11:42 AM 6120472383

200306 05
.03377

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, the Revocable Trust Trustee(s), the Revocable Trust Settlor(s), and the Lender further covenant and agree as follows:

ADDITIONAL BORROWER(S)

The term "Borrower" when used in the Security Instrument shall refer to the Revocable Trust Trustee(s), the Revocable Trust Settlor(s), and the Revocable Trust, jointly and severally. Each party signing this Rider below (whether by accepting and agreeing to the terms and covenants contained herein and agreeing to be bound thereby, or both) covenants and agrees that, whether or not such party is named as "Borrower" on the first page of the Security Instrument, each covenant and agreement and undertaking of the "Borrower" in the Security Instrument shall be such party's covenant and agreement and undertaking as "Borrower" and shall be enforceable by the Lender as if such party were named as "Borrower" in the Security Instrument.

BY SIGNING BELOW, the Revocable Trust Trustee(s) accepts and agrees to the terms and covenants contained in this Revocable Trust Rider.

_____
DALE W. DOWERS
Trustee of the   DOWERS TRUST NO. 1 TRUST UNDER TRUST INSTRUMENT DATED 08/13/93

_____
DEBRA J. DOWERS
Trustee of the   DOWERS TRUST NO. 1 TRUST UNDER TRUST INSTRUMENT DATED 08/13/93

_____

Trustee of the

_____

Trustee of the

 —BA113 (9708).01                    Page 2 of 3                    RE-901-MS

C113 05/29/03 11:42 AM 6120472383

200306 05
.03377

BY SIGNING BELOW, the undersigned Revocable Trust Settlor(s) acknowledges all of the terms and covenants contained in this Revocable Trust Rider and agrees to be bound thereby.

_____ , Trustee
DALE W. DOWERS
Revocable Trust Settlor

_____ , Trustee
DEBRA J. DOWERS
Revocable Trust Settlor

_____
Revocable Trust Settlor

_____
Revocable Trust Settlor

—BA113 (9702).01                    Page 3 of 3                    RE-901-MS

C113 05/29/03 11:42 AM 6120472383

*****          CLARK COUNTY, NEVADA          *****
               FRANCES DEANE, RECORDER
        RECORDED AT REQUEST OF: UNITED TITLE OF NEVADA
06-05-2003  14:07      JYB      PAGE COUNT:  22

               OFFICIAL RECORDS

BOOK/INSTR:20030605-03377      FEE:     35.00
                               RPTT:      .00

**EXHIBIT 3**

**EXHIBIT 3**

610  870968298  D4  001  001

LOAN NO: 6120472383

## ASSIGNMENT OF SECURITY INSTRUMENT

DATE: AUGUST 27, 2003

OWNER AND HOLDER OF SECURITY INSTRUMENT ("HOLDER"): BANK OF AMERICA, N.A.

ASSIGNEE:     Wells Fargo Bank Minnesota, National Association, as trustee
for holders of the Banc of America Alternative Loan Trust 2003-7
Mortgage Pass-through Certificates, Series 2003-7
SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

DATE: May 29, 2003
ORIGINAL AMOUNT: $897,500.00
BORROWER (S): DALE W DOWERS AND DEBRA J DOWERS

DEED OF TRUST/ MORTGAGE RECORDED OR FILED ON _____
AS INSTRUMENT / DOCUMENT NO. _____
IN BOOK _____ PAGE _____
OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OR CLERK'S
OFFICE OF CLARK COUNTY, NV

FOR VALUE RECEIVED, HOLDER SELLS, TRANSFERS, ASSIGNS, GRANTS AND CONVEYS THE
SECURITY INSTRUMENT AND THE NOTE DESCRIBED THEREIN, ALL OF HOLDER'S RIGHTS,
TITLES AND INTERESTS IN THE SECURITY INSTRUMENT AND NOTE, AND ALL OF HOLDER'S
TITLE AND INTEREST IN THE PROPERTY TO ASSIGNEE AND ASSIGNEE'S SUCCESSORS AND
ASSIGNS, FOREVER.

WHEN THE CONTEXT REQUIRES, SINGULAR NOUNS AND PRONOUNS INCLUDE THE PLURAL.

IN WITNESS WHEREOF, HOLDER HAS CAUSED THESE PRESENTS TO BE SIGNED BY ITS DULY
AUTHORIZED OFFICER (S) AND TO BE ATTESTED, AS MAY BE REQUIRED.



BY: _____
DEREK ADAMS, ASSISTANT VICE PRESIDENT

ATTEST: _____
WITNESS: VEOLA RANDOLPH

STATE OF TEXAS
COUNTY OF DALLAS

THIS INSTRUMENT WAS ACKNOWLEDGED BEFORE ME THIS AUGUST 27TH, 2003 BY DEREK
ADAMS, ASSISTANT VICE PRESIDENT OF BANK OF AMERICA, N.A., ON BEHALF OF SAID
CORPORATION.

_____
NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS
MY COMMISSION EXPIRES:

ESMERALDA GONZALEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 10-01-05

PREPARED BY: Bank of America, NA; Shipping / Loan Delivery Department; 1201 Main St., Suite 702; Dallas, Texas 75202-3113

**EXHIBIT 4**

**EXHIBIT 4**

(Page 3 of 5)

REPRESENTATION OF PRINTED DOCUMENT



PO Box 650783
Dallas, Texas 75265

November 13, 2013

3-692-80496-0001996-001-03-019-000-000-000

DALE W DOWERS
DEBRA J DOWERS
5920 S RAINBOW BLVD STE 11
LAS VEGAS NV 89118-4209

New Nationstar Loan Number: 0616993069

NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

Dear DALE W DOWERS:

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from BANK OF AMERICA, N.A. to Nationstar Mortgage LLC, effective 11/01/13.

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that BANK OF AMERICA, N.A. send you this notice at least 15 days before the effective date of transfer and Nationstar Mortgage must also send you this notice no later than 15 days after the effective date of the transfer.

Your new servicer is Nationstar Mortgage LLC.

Nationstar Mortgage's business address is:

Nationstar Mortgage LLC
350 Highland Drive
Lewisville, Texas 75067
www.MyNationstar.com

Nationstar Mortgage's toll free number is 1-877-782-7612. Your prior servicer is BANK OF AMERICA, N.A.. If you have any questions relating to the transfer of servicing from BANK OF AMERICA, N.A. to Nationstar Mortgage, call 1-877-782-7612 between 8 a.m. and 8 p.m. on the following days Monday - Thursday, 8 a.m. and 6 p.m. on Friday, or visit us anytime at www.MyNationstar.com.

The date BANK OF AMERICA, N.A. will stop accepting payments from you is 10/31/13. The date that Nationstar Mortgage will start accepting payments from you is 11/01/13. You can pay online via the Nationstar Mortgage website at www.MyNationstar.com, or you can send all payments due on or after that date to:

Nationstar Mortgage LLC
PO Box 650783
Dallas, Texas 75265

Your mortgage life insurance, disability insurance and/or other optional products will not continue. If you wish to retain optional products, you will need to contact your current optional product/service provider.

Enclosed is your Welcome Letter with detailed loan information.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 5 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:

Nationstar Mortgage LLC
Attention Research Department
350 Highland Drive
Lewisville, Texas 75067
www.MyNationstar.com

Not later than 30 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 30-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

Important Loan Transfer "Home Affordable Modification Program" Information

Home Affordable Modification Program: If you are currently participating in (or being considered for) a loan modification program, the prior servicer transferred all your documentation to Nationstar. After the transfer, you should make all payments to Nationstar until such time that you are provided additional direction. Decisions regarding qualification will be made by Nationstar. All information regarding other loss mitigation activities (forbearance agreements, short sales, refinances and deed-in-lieu of foreclosure) will be forwarded to Nationstar for processing. Please be advised that this transfer may extend the time needed for a final decision.

Sincerely,
Nationstar Mortgage LLC

INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT

### Frequently Asked Questions and Answers
### About Transfers of Mortgage Loan Servicing

1) Are my rights under the loan documents affected?
   No. The terms of the loan are not affected by this loan servicing transfer; your loan is simply being transferred to Nationstar Mortgage for servicing.

2) I already sent my payment to my previous servicer. Will my payment be forwarded to Nationstar?
   Yes. Your previous servicer will forward the payment to Nationstar and we will credit it to your loan. However, sixty (60) days after the transfer they may no longer provide this service and the payment may be returned to you.

3) Currently, I have my tax and insurance payments made by my mortgage company. Will this continue?
   Yes. If you currently have escrow funds held for the payment of your taxes and/or insurance premiums, Nationstar will continue collecting these funds and making those payments.

4) Do I need to contact my insurance company?
   Yes. Please ask your insurance carrier to change the mortgage clause to:

   Nationstar Mortgage LLC
   Its Successors and/or Assigns (ISAOA)
   As Their Interests May Appear (ATIMA)
   PO BOX 7729
   Springfield, OH 45501

   You will also need to change your loan number to the new Nationstar loan number.

5) When will I receive my year-end information for tax purposes and for my records?
   Both your previous servicer and Nationstar will provide you with separate statements no later than January 31st. These statements will reflect the amount of mortgage interest paid and any real estate taxes paid through your escrow account during the period of time your loan was serviced by each company.

6) How do I make my monthly mortgage payment?
   Nationstar offers several options to make your monthly payment:
   - Monthly Automatic Payment Program - This free, recurring, automatic service deducts your monthly payment from your checking or savings account on the same day each month. Simply visit our website at www.MyNationstar.com under My Account, select "Make a Payment" to enroll in this service.
   - On Demand Speedpay - Available options:
     1) Via the Web - Register on our secure website at www.MyNationstar.com and schedule your payment. This option is provided at no charge to you as long as you schedule your payment within 9 days of the due date. Thereafter, there may be a fee of $9.95 to make an online payment.
     2) Via IVR - Call us at 1-888-480-2432 anytime to schedule a payment through our automated telephone system. The fee for this service is up to $9.95.
     3) Via a Customer Service Representative - Call us at 1-888-480-2432 and speak with our Customer Service Department. You can reach a representative Monday through Thursday between 8:00 A.M. and 8:00 P.M. CT, Friday between 8:00 A.M. and 6:00 P.M. CT, and Saturday between 8:00 A.M. and 2:00 P.M. CT. A $15.00 fee may apply for this service.
   - Bi-weekly Payment Program - We offer different plans where funds are automatically drafted from your checking or savings account and remitted to Nationstar. The program affords you the opportunity to payoff your mortgage sooner, which results in interest savings, early PMI removal, increased equity and payday budgeting. For more information on this program or to enroll, please call 1-800-456-1554. If you have questions or need to make changes to your current enrollment, please call 1-800-209-9700.
   - Mailing Your Payment - Please use the coupon attached to the Welcome Letter for your initial payment to Nationstar. Each month hereafter, you will receive a billing statement to make your monthly mortgage payment. If you misplace the coupon you can mail your payments to:

     Nationstar Mortgage LLC
     P.O. Box 650783
     Dallas, TX 75265-0783

   - Western Union Quick Collect or MoneyGram ExpressPayment™ - Nationstar allows you to send funds directly to our office by wire using these services. There is a fee associated with each service. For the nearest payment location and for further details call 1-800-325-6000 for Western Union or 1-800-926-9400 for MoneyGram. Complete the Western Union Quick Collect form using CODE CITY "ASTAR" and CODE STATE "TX" or use "Receive Code 1678" on the MoneyGram ExpressPayment™ form.

7) Currently my payments are automatically deducted by my bank or through a bill-payment service. What do I need to do to continue having my payment automatically deducted?
   If you use an online or bill paying service, please update the Payee information to:

   Nationstar Mortgage LLC
   P.O. Box 650783
   Dallas, TX 75265-0783

   Also, please update the account number to your new Nationstar loan number which is located on the cover page of the enclosed letter.

8) Periodically my escrow account is adjusted based upon a lender analysis. Will my escrow analysis date change and when will I receive an Escrow Analysis Statement?
   Nationstar complies with the Real Estate Settlement Procedure Act which requires us to perform a periodic analysis of your loan. This analysis may result in an escrow account adjustment. You will receive an escrow analysis statement each time an analysis is performed. Nationstar generally performs analysis on loans shortly after we make the largest scheduled disbursement from your escrow account.

9) I may soon be called to active duty in the military. What do I need to do?
   Please send in a copy of your Orders to report for active duty to:

   Nationstar Mortgage LLC
   Attention: Research Department
   350 Highland Drive
   Lewisville, TX 75067

INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT

10) How can I obtain the total amount to pay off my loan?
You may request a written payoff quote via our secure website, through our automated phone system, or by calling one of our Customer Service Representatives at 1-888-480-2432. In an effort to ensure all amounts quoted are accurate, we do not provide verbal payoff figures.

11) If I need information on my loan, who should I contact?
We certainly encourage you to take advantage of the convenience of accessing your loan information through our automated phone system, which is available 24/7 for your convenience. Please contact Nationstar's Customer Service Department at 1-888-480-2432 if you have questions that cannot be answered through this system or if you would simply prefer to speak to a representative.

12) How can I change my personal contact information?
You can change your mailing address, telephone number, and email address:
- Contact our Customer Service Department at 1-888-480-2432, Monday through Thursday between 8:00 A.M. and 8:00 P.M. CT, Friday between 8:00 A.M. and 6:00 P.M. CT, and Saturday between 8:00 A.M. and 2:00 P.M. CT.

13) I have life insurance or other optional products on my mortgage. Are they impacted?
Yes. If you have been paying premiums for life, disability, accidental death insurance or other optional products, these policies may not transfer to Nationstar and may be canceled. If you desire to continue your optional coverage, you should contact your product provider and discuss the possibility of directly remitting your premium to them to continue the life insurance coverage or optional products.

14) Will my modification transfer to my new servicer?
If your account was modified prior to the transfer, the modification will remain. If you were working on, but had not finalized your modification, then how we proceed will depend on what step of the process you were working on prior to the transfer. It's possible that we may need to start over, or we may need further documentation.

INTERNET REPRINT

**EXHIBIT 5**

B18 (Official Form 18) (12/07)

# United States Bankruptcy Court

District of Nevada

Case No. <u>10–16319–bam</u>

Chapter 7

In re Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):

| | |
|---|---|
| DALE WILLIAM DOWERS | DEBRA JEAN DOWERS |
| 9408 TOURNAMENT CANYON DR | 9408 TOURNAMENT CANYON DR |
| LAS VEGAS, NV 89144 | LAS VEGAS, NV 89144 |

Social Security / Individual Taxpayer ID No.:
    xxx–xx–2155                         xxx–xx–6052

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

Dated: 7/21/10

BY THE COURT

*Mary A. Schott*

Mary A. Schott
Clerk of the Bankruptcy Court

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**

B18 (Official Form 18) (12/07) − Cont.

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.]* A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts That are Not Discharged

Some of the common types of debts which are not discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes;

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans.

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**