Jay A. Shafer, Esq.
Nevada Bar No. 9184
Premier Legal Group
11333 North Buffalo Drive, Suite 210
Las Vegas, Nevada  89128
Telephone: (702) 794-4411
Fax: (702) 794-4421
jshafer@premierlegalgroup.com
Attorney for Plaintiffs,
Dale Dowers and Debra Dowers

Mark C. Fields, Esq.
Nevada Bar No. 008453
Law Offices Of Mark C. Fields, APC
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Telephone: (213) 617-5225
Fax: (213) 629-4520
fields@markfieldslaw.com
Attorney for Plaintiffs,
Dale Dowers and Debra Dowers

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DALE DOWERS, an individual; and, DEBRA DOWERS, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware limited liability company; WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, a national banking association, individually and as Trustee for holders of the Banc of America Alternative Loan Trust 2003-7 Mortgage Pass-through Certificates, Series 2003-2007; DOES 1 through 25, and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>Defendants. | Case No.: 2:14-cv-01679-JCM-PAL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**JURY TRIAL REQUESTED** |

-1-

Plaintiffs Dale Dowers and Debra Dowers hereby submit their Opposition to the Defendants' Motion To Dismiss Complaint (the "Motion").

## 1. INTRODUCTION AND SUMMARY.

The Defendants in this case are Nationstar Mortgage LLC ("Nationstar"), Wells Fargo Bank Minnesota, National Association ("Wells Fargo Minnesota"), which is sued both in its individual capacity and in its capacity as Trustee for holders of the Banc of America Alternative Loan Trust 2003-7 Mortgage Pass-through Certificates, Series 2003-2007 ("BofA Trust"), and Wells Fargo Bank, National Association ("Wells Fargo").

The Complaint's first four Causes of Action assert violations of various subsections of the Federal Debt Collection Practices Act (the "FDCPA"). The Motion seeks dismissal of those four Causes of Action pertaining to the FDCPA on the following two grounds: (1) the Defendants cannot be debt collectors within the meaning of the FDCPA; and (2) Defendants cannot be liable with respect to the initiation of a non-judicial foreclosure. Both grounds asserted in the Motion to challenge the first four Causes of Action are without merit.

Since on November 13, 2013 the Defendant Nationstar was assigned the loan servicing rights to the subject Note, Deed of Trust, and related documents (collectively, the "Loan Documents) **after the subject loan was in default**, Defendant Nationstar is not precluded as a matter of law from being deemed a debt collector within the meaning of the FDCPA, as incorrectly asserted in the Motion, and the other Defendants are liable for the conduct of their agent Nationstar.[1]

The Motion also incorrectly characterizes the Complaint as seeking damages for actions of the Defendants in initiating a non-judicial foreclosure. Rather, the Complaint asserts a detailed and sordid list of the wrongful conduct of Defendants, including repeatedly contacting Plaintiffs after having been informed in writing by Plaintiffs' counsel that Defendants should only contact Plaintiffs' counsel and not Plaintiffs directly, by making numerous threats to take actions which they had no legal right to undertake and did not intend to undertake, and by repeatedly lying in their written communications to

---

[1] There is also a dispute as to whether the actual Loan Documents were effectively assigned from Bank of America to Wells Fargo Minnesota, Trustee before of after the subject loan was in default; if the assignment is viewed as subsequent to the loan default, then the other Defendants can also be debt collectors within the meaning of the FDCPA (in addition to being vicariously liable for the actions of their agents).

-2-

1  Plaintiffs and thereafter stonewalling about their lies, all in a successful attempt to gain by harassment
2  and intimidation a result which they could not obtain by law.
3     Just because a lender or its loan servicer may if legally entitled to do so initiate and conduct a
4  non-judicial foreclosure sale does not provide any sort of blanket immunity for wrongful acts by a lender
5  or loan servicer prior to the recordation of a Notice Of Default to initiate a non-judicial foreclosure.
6  Under the completely unsupported and bizarre theory promoted by the Motion, if the Defendants
7  improperly harassed or intimidated Plaintiffs prior to the initiation of a non-judicial foreclosure, such
8  activity is somehow protected and not a violation of the FDCPA even if the form of that intimidation
9  was to firebomb the Plaintiffs' home on the drive to the Clark County Recorder's Office on the way to
10 record a Notice Of Default under the Deed of Trust.
11    The Motion seeks dismissal of the Fifth Cause of Action for Intentional Infliction Of Emotion
12 Distress, on the grounds that the recordation of Notice of Default to initiate a non-judicial foreclosure
13 does not give rise to an emotional distress claim. However, the emotional distress claim is based on a
14 lengthy series of wrongful conduct set forth in Paragraphs 17 through 50 of the Complaint and the
15 accompany exhibits, which sets forth an obnoxious pattern of repeated lies, improper threats,
16 stonewalling, continuing abuse and harassment, and direct contact with Plaintiffs by Defendants after
17 being informed by counsel to only contact Plaintiffs' counsel, as set forth in more detail in the following
18 Section of this Opposition.
19    The Motion seeks dismissal of the Sixth Cause of Action for Deceptive Trade Practices on the
20 grounds that it is not pled with the requisite particularity and that NRS 598 is inapplicable to real estate
21 transactions. However, Nationstar as mortgage loan servicer provided services and engaged in
22 deception and other wrongful conduct in connection with those services. There is no exclusion from
23 NRS 598 for those types of services, and the detailed factual discussion in the Complaint constitutes
24 pleading with adequate particularity. Only if the Court were to hold that as a matter of law that specific
25 subsections of NRS 598 need to be referenced in the Complaint would the Motion be meritorious on this
26 ground, in which event an amended complaint could be filed which would specify particular subsections
27 of NRS 598 to which the extremely detailed factual allegations of the Complaint relate to.
28

## 2. STATEMENT OF FACTS.

Plaintiffs borrowed $897,500 from Bank of America on May 29, 2003 as a refinance of the loan secured by their Home. **Ex. 1.**[2] On June 28, 2010, after Plaintiffs defaulted on their loan to Bank of America, a notice of default was recorded against Plaintiffs' Home. **Ex. C.** There is no dispute that Plaintiffs have not made any payments on the loan since prior to the first recordation of a Notice of Default on June 28, 2010. (The second Notice of Default, recorded on September 30, 2013, lists the default as failure to make the payment due on September 1, 2009 and all subsequent payments; **Ex. H).**

On November 13, 2013 (after the loan was in default), the loan servicing rights to the Loan Documents were assigned to Nationstar. **Ex. 4.** (The Loan Documents themselves were purportedly assigned on August 27, 2003 from Bank of America to Wells Fargo Bank Minnesota, as Trustee for holders of the Banc of America Alternative Loan Trust 2003-7 Mortgage Pass-through Certificates, Series 2003-2007 ("BofA Trust") **(Ex. 3),** but the assignment of the Deed of Trust from Bank of America to Wells Fargo Minnesota as Trustee for BofA Trust was recorded on February 10, 2010, which was after the loan was in default. **Ex. D.**

After a non-judicial foreclosure was initiated for a second time, a Documents Conference was held. Because of Defendants' failure to produce a completed and notarized Documents Affidavit in connection with the Document Conference and the Foreclosure Mediation, the Mediator ruled on February 13, 2014 as follows: **"WILL NOT ISSUE** a Certificate Of Foreclosure" (Emphasis in original.) ¶¶ 15 – 16; **Ex. 7**

Paragraphs 17 – 50 of the Complaint set forth in detail the wrongful conduct perpetrated by the Defendants. This Opposition will only summarize the wrongful conduct perpetrated by Defendants as described in the Complaint, but in broad strokes such wrongful behavior falls into the following categories: (a) contacting Plaintiffs after being informed in writing not to do so; (b) making numerous false and misleading statements; (c) threatening to take action which they were not entitled to take and which they didn't intend to take; and, (d) stonewalling and refusing to respond to repeated demands as to the truth or falsity of statements made by Defendants, including most egregiously refusing to confirm

---

[2] References in the Statement of Facts and elsewhere in this Opposition to Paragraphs will be to Paragraphs of the Complaint, to numbered Exhibits will be to the Exhibits to the Complaint, and to lettered Exhibits will be to Exhibits to the Motion.

-4-

the truth or falsity of the Note Possession Statement (discussed *infra*).

These direct contacts, lies, threats and stonewalling were a toxic stew of wrongdoing, all designed to harass and intimidate Plaintiffs and to fool them into thinking that Defendants were in a position to non-judicially foreclose on their Home when in fact Defendants were not in such a position, thus collectively constituting unfair, extreme, outrageous and in fact unconscionable conduct and debt collection activities. A non-exclusive summary of those types of wrongful conduct are set forth in the following four subsections of this Opposition

### 2.A   IMPROPER DIRECT COMMUNICATIONS WITH PLAINTIFFS.

Plaintiffs' counsel informed Defendants that all communications should be in writing and directed to Plaintiffs' counsel rather than to Plaintiffs directly. This was first communicated in writing on April 2, 2014 (**Ex. 9**) and again on June 25, 2104 (**Ex. 12**). Defendants have repeatedly ignored such instruction and have repeatedly communicated both verbally and in writing with Plaintiffs after having been instructed not to do so. A list of those improper communications include the following[3]:

- On at least three occasions in late May to early June, 2014, Nationstar personnel verbally called Mr. Dowers. ¶ 22.

- In May through June, 2014, on three occasions Nationstar placed written notices on the door of Mr. and Mrs. Dowers' Home, which notices state in large, bold capital letters "IMPORTANT", and also stated in large bold and capitalized letters "PLEASE BE READY TO GIVE YOUR ACCOUNT NUMBER" and "WE ARE EXPECTING YOUR CALL TODAY". ¶ 23; **Ex. 10.**

- On June 18, 2014, Nationstar sent a Mortgage Loan Statement directly to Mr. and Mrs. Dowers. ¶ 24, **Ex. 11.**

- On August 26, 2014, Nationstar sent a letter directly Plaintiffs, which threatened a non-judicial foreclosure and stated *inter alia* as follows: "Noteholder, directly or through an agent, has possession of the promissory note." (the "Note Possession Statement").

---

[3] Although this Opposition will only discuss the wrongful conduct alleged in the Complaint, Defendants wrongful conduct and direct communications with Plaintiffs have continued unabated and have if anything increased in frequency and severity after the filing and service of the Complaint.

**2.B     DEFENDANTS' LIES AND MISLEADING STATEMENTS.**

Nationstar's lies and misleading statements include the following:

- The statement in Nationstar's March 25, 2014 letter that Nationstar may invoke the remedies provided for in the Note and Deed of Trust, including but not limited to foreclosing, when in fact Nationstar was not in a position to do so because the Defendants were not and are not in a position to complete the Documents Affidavit requisite to initiate a foreclosure proceeding. ¶ 17, Ex. 8.

- The statement in Nationstar's July 21, 2014 letter that it did not receive notice that Plaintiffs were represented by counsel until July 3, 2014, when in fact such notice was provided both on April 2, 2014 and June 25, 2014. ¶ 29, Ex. 16.

- The Note Possession Statement ("Noteholder, directly or through an agent, has possession of the promissory note."), set forth in Nationstar's August 26, 2014 letter. ¶¶ 32 – 34, Ex. 17. The Note Possession Statement is not only false, it is also misleading, because in order to proceed with its foreclosure the Defendants would have to have originals of the Loan Documents and not just the Note.

- The transmission with Nationstar's September 4, 2014 letter of a document entitled Original Document File Review Checklist, dated March 20, 2014 ("Original Document Checklist"), which document purports to show that Nationstar has possession of the original of the Note and Deed of Trust, when in fact Nationstar had possession of neither of those original documents. ¶¶ 42 – 43, Ex. 24.

**2.C     DEFENDANTS' IMPROPER THREATS, HARASSMENT, AND INTIMIDATION**

Defendants have repeatedly improperly threatened, harassed, and intimidated Plaintiffs. All of the direct contacts by Defendants to Plaintiffs (described *supra* in Section 2.A) after having been told not to do so by Plaintiffs' counsel was conduct which when repeated over and over again are not just technical violations of a statute but a deliberate campaign of harassment and intimidation.

Defendants have repeatedly stated they intend to conduct foreclosure and lied about having possession of the original note, in order to convince Plaintiffs that Defendants could non-judicially foreclose on Plaintiffs' Home when in fact they were precluded from doing so because they do not have possession of the original Loan Documents. ¶¶ 17 - 18, Ex. 8; ¶¶ 32 – 33, Ex. 17; ¶¶ 40 – 44, Ex.s 23 and 24.

After having been denied the right to non-judicially foreclose, Defendants sought by a campaign of lies and harassment to obtain by improper threats what they could not obtain legally, and such harassment was successful to such an extent that it became intolerable. ¶¶ 50 – 51.

### 2.D  DEFENDANTS STONEWALLING ABOUT ITS LIES.

Separate and apart from Defendants false Note Possession Statement is Defendants' unbelievable stonewall and refusal to admit that the Note Possession Statement is a lie.

The day after Defendants sent the false Note Possession Statement directly to Plaintiffs and improperly threatened to foreclose on their Home based on the false assertion that Defendants had the original note, Plaintiff's' counsel sent two emails demanding the truth from Defendants, which emails included the following statements:

> This letter will follow up the message I left on your voicemail a few moment ago. I received your Notice dated August 26, 2014 with respect to the above-referenced Account and Property. I note that your Notice stated in Section 1 (entitled "Right to Foreclose") that Nationstar intends to initiate a foreclosure on the Property and further states: "Noteholder, directly or through an agent, has possession of the promissory note."
>
> Let me be extremely blunt. I think it extremely likely that your Notice which states that Nationstar intends to initiate a foreclosure is an illegal threat, because the statement that "Noteholder, directly or through an agent, has possession of the promissory note" is a blatant and abusive lie. **Ex. 19**

And,

> This office will not allow Nationstar to make knowingly false statements and then hide behind layers of bureaucracy to obfuscate its dishonesty.
>
> Demand is hereby made that you immediately confirm whether or not the statement in your August 26, 2014 Notice that "Noteholder, directly or through an agent, has possession of the promissory note" is truthful or untruthful. If it is truthful, then demand is again made that you provide a signed and notarized Affidavit Of Documents.
>
> If you do not respond to this direct demand in this email to clarify whether the above-referenced statement is true or false, and if such a statement turns out to be false, then your refusal to correct your lie will be an additional element of actual damages and a basis for a massive amount of punitive damages, based not only on a lie but on a continuing cover-up of the lie. Since you made the statement yesterday, you must know whether such statement is true or false, and so there can be no excuse for not responding to this email tomorrow. **Ex. 20.**

A similar demand for Defendants to tell the truth was sent on August 29, 2014 to Nationstar's top executives. Defendants simply continue to stonewall and refuse to admit their lies. ¶¶ 35 - 46, Ex.s 19 – 22. In fact, Defendants continue to refuse to acknowledge whether the Note Possession Statement is true or false despite continuing weekly demands by the Plaintiffs that they provide an honest and straightforward answer.

3. **LEGAL STANDARD**.

The Motion cites *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Igbal*, 556 U.S. 662 (2009) in challenging all Causes of Action of the Complaint on the grounds that the Complaint fails to set forth sufficient factual allegations to state a claim for relief which is plausible on its face. The Motion, however, simply ignores the specific factual allegations in the Complaint which more than provide a basis for the relief requested in all six Causes of Action.

In denying a motion to dismiss, the Ninth Circuit has recently analyzed the standard set forth in *Twomly*, *Iqbal*, and other Supreme Court precedents, and summarized those principles, as follows:

> The juxtaposition of *Swierkiewicz* and *Erickson*, on the one hand, and *Dura*, *Twombly*, and *Iqbal*, on the other, is perplexing. Even though the Court stated in all five cases that it was applying Rule 8(a), it is hard to avoid the conclusion that, in fact, the Court applied a higher pleading standard in *Dura*, *Twombly* and *Iqbal*. The Court in *Dura* and *Twombly* appeared concerned that in some complex commercial cases the usual lenient pleading standard under Rule 8(a) gave too much settlement leverage to plaintiffs. That is, if a non-specific complaint was enough to survive a motion to dismiss, plaintiffs would be able to extract undeservedly high settlements from deep-pocket companies. In *Iqbal*, by contrast, the Court was concerned that the usual lenient standard under Rule 8(a) would provide too little protection for high-level executive branch officials who allegedly engaged in misconduct in the aftermath of September 11, 2001. To the extent that we perceive a difference in the application of Rule 8(a) in the two groups of cases, it is difficult to know in cases that come before us whether we should apply the more lenient or the more demanding standard.
> 
> But whatever the difference between these cases, we can at least state the following two principles common to all of them. First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such

that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. *Starr v. Baca*, 652 F.3d 1202, 1215 – 1216 (9th Cir. 2011), rehearing denied, 659 F.3d 850, cert. *denied 2012 U.S. Lexis 3289.*

Also recently the Ninth Circuit, in denying a motion to dismiss, stated that "[I]t is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6)." *Whitaker v. Countrywide Financial Corp*, 2010 U.S. Dist. LEXIS 122319; *see also, e.g. U.S. v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981.)

### 4. **DEFENDANTS CAN BE LIABLE UNDER THE FDCPA**

The Motion seeks dismissal of Causes of Action One through Four on the grounds that recording a notice of default to initiate a non-judicial foreclosure is not an attempt to collect a debt under the FDCPA and that none of the Defendants can be considered a debt collector within the meaning of the FDCPA.

The Complaint does not, however, assert liability of the Defendants for recording a notice of default to initiate a non-judicial foreclosure proceeding, so the cases cited by the Motion in support of that principle are completely irrelevant. The Complaint asserts a plethora of wrongdoing, summarized in the Statement of Facts *supra*, consisting of improper direct communications, lies, threats, abuse, harassment, and stonewalling, all of which are specifically prohibited by the FDCPA. The fact that a creditor might hold a deed of trust does not provide any type of blanket immunity for the FDCPA violations described in the Complaint any more than it would provide a blanket immunity for a creditor throwing a firebomb at a borrower's residence on the drive over to the Clark County Recorder's Office to record a Notice of Default. Both banks and loan servicing agents can be held liable for violation of the FDCPA for steps taken prior to the initiation of the recordation of a notice of default to initiate a non-judicial foreclosure. *See e.g., Rockridge Trust v. Wells Fargo, N.A.*, 989 F.Supp.2d 1110, 1137 (N.D. CA. 2013). (". . . the challenged wrongful acts relate to specific conduct in the loan modification negotiations, not the execution of the nonjudicial foreclosure process.")

The Motion's contention that the Defendants cannot be viewed as debt collectors within the meaning of the FDCPA ignores the facts that the loan servicing rights (and perhaps the Loan Documents themselves) were assigned after the loan default. A lender which acquires a loan after that loan is in default, or a mortgage loan servicer which acquires the servicing rights to a loan after that loan is in default, can both be debt collectors within the meaning of the FDCPA. *See e.g., Bridge v. Ocwen Federal Bank*, 681 F.3d 355, 359 (6th Cir. 2012):

> The distinction between a creditor and a debt collector lies precisely in the language of § 1692a(6)(F)(iii). For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106–8 (6th Cir.1996); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985)

*Accord, Diaz v. Federal Nat. Mort. Ass'n*, 990 F.Supp.2d 1042, 1052 – 1053 (D. HI. 2013):

> Defendants argue that they are not "debt collectors" under the statute. The Court notes that—
>
> > original lenders, creditors, mortgage servicing companies, and mortgage brokers generally do not qualify as "debt collectors." *See, e.g., Lyons v. Bank of Am., NA*, 2011 WL 3607608, at *12 (N.D.Cal. Aug. 15, 2011) ("The FDCPA applies to those who collect debts on behalf of another; it does not encompass creditors who are collecting their own past due accounts."); *Radford v. Wells Fargo Bank*, 2011 WL 1833020, at *15 (D.Haw. May 13, 2011) (collecting cases stating that original lenders and mortgage servicing companies are not "debt collectors"); *Sakugawa v. IndyMac Bank, F.S.B.*, 2010 WL 4909574, at *5 (D.Haw. Nov. 24, 2010) (dismissing FDCPA claim because the mortgage broker was not a "debt collector").
>
> *Long v. Deutsche Bank Nat. Trust Co.*, Civil No. 10–00359 JMS/KSC, 2011 WL 5079586, at *14 (D.Haw. Oct. 24, 2011). Here, however, because Plaintiff stopped making payments on the loan in January 2009, it appears that the debt was already in default when it was assigned on August 31, 2009. Complaint ¶¶ 22–24. Because the debt was already in default at the time of the assignment, Defendants have not established that they are not debt collectors under the FDCPA as a matter of law, and the Court will not dismiss the claims on this basis at this time. 15 U.S.C. § 1692a(6)(F); *see Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, *as long as the debt was not in default at the time it was assigned*.") (emphasis added).

1   *See also, e.g. Kapsis v. American Home Mortg. Servicing, Inc.*, 923 F.Supp.2d 430 (E.D.N.Y.
2   2013); *Stagkas v. Saxon Mortg. Services, Inc.*, 795 F.Supp.2d 129 (D.Mass. 2011).

Nationstar's argument that it is not a debt collector because it is a mortgage loan servicer is clearly baseless, because there can be no doubt that Nationstar was assigned the loan servicing rights on November 13, 2013, which is more than four years after the loan went into default in 2009. **Ex. 4**.

The capacities of the other Defendants is somewhat more complicated. BofA Trust is the purported owner of the Loan Documents, although BofA Trust has been described with at least three different descriptions, so whether or not that trust was ever properly or formally formed is still an open question. ¶ 49. Also, as stated at Paragraph 7 on Page 3 of Defendants' Petition For Removal, Wells Fargo Minnesota merged into Wells Fargo in February, 2004. Nonetheless, there was recorded on February 10, 2010 in the Clark County Recorder's Office an assignment of the Deed of Trust (along with the applicable Loan Documents) from Bank of America to Wells Fargo Minnesota, Trustee for the BofA Trust, despite the fact that Wells Fargo Minnesota had ceased to exist six year earlier. **Ex. C**.

Although the assignment of the Deed of Trust (along with applicable Loan Documents) was recorded in Clark County, Nevada on February, 2010 (**Ex. D**), there was a prior assignment of the Deed of Trust (along with applicable Loan Documents) that appears to have been executed on August 27, 2003 and which appears to have only been recorded in Texas. **Ex. 3**. Since the Deed of Trust pertains to real estate in Nevada and not Texas, the first assignment recorded in Texas in 2003 appears to be either in error or incomplete, and it was not until February, 2010 that the assignment of the Deed of Trust was recorded in Nevada. It is worth noting that the assignment to Wells Fargo Minnesota, Trustee which was recorded in Nevada in February, 2010 was executed by Bank of America on January 29, 2010. If the first assignment in 2003 was valid and in effect despite not having been recorded in Nevada, then the second assignment that was recorded was without any forced or effect, since it was signed by Bank of America, which would have been divested of all interest in the Loan Documents if the first assignment had been in effect.

Nationstar was assigned loan servicing rights in November, 2013 (which is more than 4 years after the 2009 monetary default), so there is no dispute about Nationstar's eligibility as a debt collector within the meaning of the FDCPA. With respect to Wells Fargo Minnesota, Wells Fargo, and BofA

Trust, they are either eligible or ineligible to be debt collectors within the meaning of the FDCPA, depending upon whether the relevant assignment of the Loan Documents is viewed as the 2003 assignment recorded in Texas (**Ex. 3**) or the 2010 assignment accorded in Nevada (**Ex D**). For the reasons discussed *supra*, the better approach would be to give effect to the 2010 assignment when the Deed of Trust assignment was actually recorded in the proper county; in that approach, they would be eligible to be debt collectors. If the 2003 assignment is viewed as the trigger date for the analysis of whether Wells Fargo, Wells Fargo Minnesota, and BofA Trust are eligible to be considered debt collectors within the meaning of the FDCPA, then they would not be debt collectors because the assignment would be prior to the monetary default under the Loan Documents. However, even if those Defendants were not debt collectors, after the loan went into default they assigned the loan servicing rights to Nationstar in 2013. Having hired a debt collector who acted as their loan servicing agent, they would be liable for the wrongful and tortious conduct of their agent. *See e.g. Couturier v. American Invsco Corp.*, 10 F.Supp.3d 1143 (D.Nev. 2014); *Countrywide Home Loans, Inc. v. Thitchener*, 124 Nev. 725 (2008); *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598 (2000).

### 5. **DEFENDANTS ARE LIABLE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

The Motion correctly cites *Dillard Dept. Stores, Inc. v. Beckwith*, 115 Nev. 372 (2000) for the proposition that the elements of a cause of action for intentional infliction of emotional distress are (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation. *See also, e.g. Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 92 (1981). The Motion then seeks to apply that legal principle to a version of facts completely divorced from the allegations of the Complaint.

The Motion contends that attempting to foreclose is simply a remedy in the deed of trust which Plaintiffs' agreed to. However, as set forth in this Opposition's Statement of Facts, the Complaint alleges a lengthy and detailed series of wrongful conduct by Defendants, including 8 separate instances in which Defendants directly contacted Plaintiffs after having been instructed in writing not to do so, numerous threats to foreclose when they did not have the ability or intention to foreclose, numerous lies to make

their threat of foreclosure more plausible and intimidating, and stonewalling when confronted about their lies. It is telling that Defendants view such conduct as not extreme or outrageous, and perhaps by their custom and habit such conduct is simply standard operating procedure, but that does mean to the rest of the civilized world such conduct should be tolerated.

Typical of the Motion's mischaracterization of the Defendants' conduct is what appears to be the Motion's complement of the Defendants for rescinding the Notice of Default. **Motion, p. 6, ll. 7 – 8.** The Motion omits the facts that after the Mediator issued his decision on February 13, 2014 denying Defendants' right to foreclose (**Ex. 7**), the Notice of Default was not rescinded until July 16, 2014. **Ex. K.** The Motion omits the fact that the rescission of the Notice of Default, recorded five months after the adverse ruling, was only done as a direct result of three separate written demands by Plaintiffs' counsel to rescind the Notice of Default and only after the last written demand stated that if the Notice of Default was not rescinded that week that Defendants would be sued for not rescinding the Notice of Default. **Ex. 14.** Plaintiffs' counsel's July 15, 2014 email to Defendants stated *inter alia as follows:*

> It is clear that Bank of America and Nationstar are hiding behind layers of bureaucracy to avoid fulfilling their obligation to rescind the Notice of Default. Mr. Bass' letter dated July 3, 2014 states he will respond to my April 2, 2014 letter by July 23, 2014. Let me be clear. The time for Nationstar and Bank of America to continue to refuse to rescind their invalid Notice of Default has long since expired. If it is not rescinded by the end of this week, please be assured that by the end of the month if not sooner that this firm will file a lawsuit against Bank of America and Nationstar for quiet title and for all other remedies available at law and equity for the outrageous abuse of violating and continuing to violate Nevada foreclosure procedures on Mr. and Mrs. Dowers' home. It is quite apparent that your intentionally bad faith tactics are nothing more than an attempt to scare your borrowers into thinking you have the right to foreclose on their home, which you don't.
> 
> . . .
> This is the third time I have demanded in writing that the Notice of Default be rescinded. The next demand will be in the form of a Summons and Complaint.

After the third written demand and a warning that they would be sued if the Notice of Default was not rescinded that week, more than five months late the Defendants deigned to rescind the Notice of Default. Shockingly, within approximately a month, on August 26, 2014 Defendants then again contacted Plaintiffs directly in violation of two written instruction to only contact Plaintiffs' counsel. **Ex. 17.** Defendants' August 26, 2014 letter started by acknowledging in bold and capitalized letters that

federal law requires Nationstar to inform Plaintiffs that Nationstar is a debt collector and further that: "We are willing to inform you that your mortgage loan payment is past due, and our property may be referred to foreclosure fourteen (14) days after the date of this letter." The August 26, 2014 followed up that statement with the Note Possession Statement.

In other words, having been denied the right to foreclose because they didn't have the original note or other Loan Documents, it took five months, three written demands, and the threat of a lawsuit to get the improper Notice of Default rescinded. The following month, however, Defendants unlawfully communicated directly with Plaintiffs, threatened a foreclosure, and falsely stated they had possession of the Note and were thus in a position to make good on their (invalid) threat to foreclose, thus adding to the harassment and intimidation factor of the communication sent directly to Plaintiffs.

As discussed in the prior Section of this Opposition, the torts of Nationstar are attributable to the other Defendants, as Nationstar acted as the agent of the other Defendants.

### 6. DEFENDANTS ARE LIABLE FOR DECEPTIVE TRADE PRACTICES

The Motion challenges the Sixth Cause Of Action on the grounds that NRS 598 does not apply to real estate transactions and that the Cause of Action is not pled with requisite particularity.

Nationstar is a loan servicing agent. The wrongful acts of Nationstar and the other Defendants was not in making a loan or completing a foreclosure process, but in various wrongful acts in the servicing of the loan. Such wrongful servicing activities are not exempt for NRS 598. *See Nevada v. Bank of America*, No. 3:11-cv-00135-RCJ-WGC, 2011 WL 5190935:

> Plaintiffs often claim in foreclosure lawsuits that the beneficiary or loan servicer made misrepresentations or unfulfilled promises concerning the availability of a mortgage modification. The State of Nevada (the "State") sued Defendants in state court on behalf of potentially thousands of individual Nevadans on a single cause of action under Nevada's Deceptive Trade Practices Act ("DTPA"), Chapter 598 of the Nevada Revised Statutes ("NRS"), alleging seven types of such misrepresentations. (*See* Compl., Dec. 17, 2010, ECF No. 4–1). The State requests declaratory judgment, an injunction against any practices declared to be unlawful, civil penalties as provided by sections 598.0999(2) and 598.0973, restitution as provided by section 598.0993, and the costs of investigation and attorney's fees as provided by section 598.0999(2).

The Complaint sets forth detailed factual allegations to establish violations of NRS 598. That allegations of wrongful conduct are set forth with great particularity; if the Court determines that specific subsections of NRS 598 need to be referenced in the Complaint, that can be done by amendment if necessary.

### 7. CONCLUSION

For all the foregoing reasons, the Motion should be denied. If the Court grants some or all of the Motion, however, leave to amend should be granted. Since the filing of the Complaint, there have been additional wrongful acts by Defendants, including additional acts of Defendants directly contacting Plaintiffs even after the lawsuit was filed and all Defendants refusing multiple demands to provide an honest and straigtforward answer as to whether the Note Possession Statement was true or false (and thereby ratifying the prior lies of Nationstar by refusing to correct such lies when directly confronted to do so.)

DATED this 11th day of November, 2014.

LAW OFFICES OF MARK C. FIELDS, APC

By: /s/ Mark C. Fields
Mark C. Fields, Esq.
Nevada Bar No. 008453
333 South Hope Street, 35th Floor
Los Angeles, California 90071
(213) 617-5225

PREMIER LEGAL GROUP

By: /s/ Jay A. Shafer
Jay A. Shafer, Esq.
Nevada Bar No. 9184
1333 North Buffalo Drive, Suite 210
Las Vegas, Nevada 89103
(702) 794-4411

Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, CA 90071-1406.

On November 11, 2014, I served true copies of the following document(s) described as **Plaintiffs' Opposition to Defendants' Motion to Dismiss** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with SulmeyerKupetz's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

Counsel for Defendants:
Ariel Stern, Esq.
Natalie Winslow, Esq.
Akerman LLP
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

Counsel for Defendants:
Ariel Stern, Esq.
Natalie Winslow, Esq.
Akerman LLP
Ariel.stern@akerman.com
Natalie.winslow@Akerman.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 11, 2014, at Los Angeles, California.

_____
Maria R. Viramontes